**Ronald Jesus BONILLA, Sr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–94–00295–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 16, 1995.

Rehearing Overruled Feb. 22, 1996.

---

Feliz Salazar, Jr., Houston, for Appellant.

Jerome Aldrich, Brazoria, David Bosserman, Angleton, for Appellee.

Before COHEN, TAFT and HEDGES, JJ.

## OPINION

HEDGES, Justice.

Ronald Jesus Bonilla appeals his felony conviction of two counts of aggravated perjury. TEX.PENAL CODE ANN. §§ 37.02(a)(1), 37.03 (Vernon 1994). A jury found him guilty, and the court assessed punishment at five-years confinement probated for five years. In two points of error, appellant challenges the sufficiency of the evidence to support his conviction. We affirm.

## FACTS

Appellant was a deputy sheriff in Brazoria County and served as jailer at the county jail. His minor son, Jameslee Bonilla, was charged with aggravated assault occurring July 16, 1993 at Albert Finkle Park in Liverpool, Texas. At a juvenile detention hearing held August 23, 1993, appellant testified on his son's behalf. Appellant was later charged with four counts of aggravated perjury in connection with his testimony at the juvenile detention hearing.

At that hearing, appellant testified on direct examination that Jameslee was at their home at 1:30 p.m. on July 16, 1993, and that Jameslee never left home that day. On cross-examination, however, appellant testified that he (appellant) was away from home working from 6:00 a.m. until 6:00 p.m. on July 16. There was also other evidence, including testimony from four eyewitnesses, that Jameslee was at Albert Finkle Park at 1:30 p.m. on July 16, 1993. Appellant also testified that he (appellant) was off work on Saturday (the 17th), Sunday, Monday, and Tuesday of that week, and that he was home all day on Saturday, July 17, 1993.

At appellant's perjury trial, two witnesses testified that appellant did not stay home all

day on July 17, 1993, but that he worked from 9:00 p.m. until 2:00 a.m. Appellant admitted that he left home a little after 8:00 p.m. to go to work.

### STANDARD OF REVIEW

■ In two points of error, appellant contends that the evidence is insufficient to sustain the jury's verdict finding him guilty of two counts of aggravated perjury. In reviewing legal sufficiency this Court must view all the evidence in the light most favorable to the jury's verdict. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). We must then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App.1993).

■ When faced with conflicting inferences, a reviewing court must presume that the trier of fact resolved any such conflict in favor of the prosecution and must defer to that resolution. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991). It is not the reviewing court's duty to disregard, realign, or weigh evidence. *Id.*

### COUNT ONE

Count one of the indictment for aggravated perjury states in relevant part:

Ronald Jesus Bonilla, Sr. hereinafter styled Defendant, on or about the 23rd day of August, A.D. 1993, ... did then and there with intent to deceive and with knowledge of the statement's meaning, intentionally and knowingly make a false statement under oath, and false statement being to-wit:

that Jameslee Bonilla was present at the Defendant's house at 1:30 P.M on July 16, 1993;

and said statement being authorized by law to be made under oath, and said statement was made during an official proceeding to-wit: a juvenile court, and said court having jurisdiction of said juvenile detention hearing and said statement made by

the Defendant was material to the official proceeding, and the said statement was made after the Defendant was duly sworn by ... Clerk of the Court for said official proceeding;

■ To establish aggravated perjury, the State was required to prove that appellant, (1) with intent to deceive and (2) with knowledge of the statement's meaning, (3) made a false statement under oath, (4) that was required or authorized by law to be made under oath, (5) in connection with an official proceeding, and (6) that the false statement was material. *See* TEX.PENAL CODE ANN. §§ 37.02–.03; *McCullar v. State,* 696 S.W.2d 579, 581 (Tex.Crim.App.1985). Appellant does not contest elements two through six; indeed, he concedes that the evidence was sufficient to sustain a finding that he made a false statement. He claims, however, that there was no evidence that he "intended to deceive." We disagree.

■ A person commits perjury if he swears to a matter about which he has no conscious knowledge. *Butler v. State,* 429 S.W.2d 497, 502 (Tex.Crim.App.1968); *Tanner v. State,* 681 S.W.2d 626, 628 (Tex.App.— Houston [14th Dist.] 1983, pet. ref'd). The gravamen of sworn testimony is that the witness declares that he knows the truth of what he states. If he is conscious that he does not know the truth of his sworn statement, then he intends to swear falsely. *Butler,* 429 S.W.2d at 502.

■ In reviewing the evidence relating to the element of "intent to deceive," it is clear that appellant knew that he had no conscious knowledge about his son's whereabouts at 1:30 p.m. on July 16, 1993. He could not know because he was not home at that time. At the detention hearing, he testified on direct examination as follows:

Q: Was Jameslee present in your home on July 16, 1993?

A: Yes, sir.

Q: Was he present in your home at 1:30 p.m. on that date?

A: He was home, yes, sir.

Q: Was he present in your home on July 17, 1993?

A: Yes, sir.

Q: Was he present in your home at 1:30 p.m. on July 17, 1993?

A: He was home.

Q: Do you recall him having left your home at any time during either of those two days?

A: No, sir. He's not allowed to leave the house.

. . . .

Q: How can you be so sure he was there over those two days?

A: First of all, July 16 it's my brother's Angel's birthday. I know that for a fact this was that day.

Q: Did you contact your brother on that date?

A: Yes, sir.

Q: Did you call him by long distance telephone?

A: Yes, sir.

Q: Was your son there when you called him?

A: He was home, yes sir.

However, on cross-examination by the prosecutor, appellant testified as follows:

Q: Mr. Bonilla, I believe you stated your son was home all day on July 16. Is that your testimony?

A: Yes, Ma'am.

Q: Okay. Were you home all day on July 16?

A: July 16 I worked from in the morning until in the afternoon, in the afternoon about twenty after six.

Q: So, your hours were—

A: Twelve-hour shifts.

Q: So, it began at six in the morning until six in the evening?

A: Yes, ma'am.

Q: Was your wife home all day?

A: She was home, yes. There is always somebody there, a member of the family. There is always somebody home.

Q: So, she was home all day Friday, July 16, to your knowledge?

A: Friday?

Q: That's the Friday, uh-huh?

A: Okay. Friday she worked, but she is home after noon at about 3:30.

Q: Okay. Who would have been home?

A: My daughter, Lonnie Bonilla.

Q: So, she was home when your wife was working?

A: Uh-huh.

Q: Do you know if she was home all day?

A: Yes, she has been home.

Q: I believe you stated y'all remember this because this is your brother's birthday, Angel's birthday.

A: Yes, sir, on the 16th.

Q: Where does he live?

A: In Hawaii, Maui, Island of Maui.

This testimony was read into the record at appellant's perjury trial.

A security manager for Southwestern Bell Telephone testified that based on telephone records for appellant's home phone, no calls were made from appellant's home phone to Hawaii on July 16. This evidence contradicts appellant's testimony that he called his brother from home on July 16 to wish him a happy birthday and that his son was present at the time. Judge Blackstock, the judge who presided over Jameslee Bonilla's detention hearing, testified that he specifically remembered appellant testifying that his son never left the house on July 16 or 17, 1993.

Testimony from witnesses at the scene of the assault provide circumstantial evidence that appellant lied about his son's whereabouts on July 16, 1993 at 1:30 p.m. First, Odis Jeane testified that he saw appellant's son at Albert Finkle Park in Liverpool on Friday, July 16, about 45 minutes before the police arrived, and that he had a gun. The sheriff's department call sheet showed that the disturbance was called in at 2:15 p.m. and that two officers arrived at the park at 2:26 and 2:32. Roy Gray, Jr. also observed appellant's son in a "park at Liverpool" on July 16, 1993. Christopher Piel testified that he was with Gray at the park, that the appellant's son arrived shortly after them, and that the police arrived about 45 minutes later. Finally, Ricky Garcia testified that on July 16 he and appellant's son went to Albert Finkle Park in Liverpool in the afternoon. He fur-

ther testified that they went to the park to swim and fight, that he saw appellant's son with a gun, and that the police got to the park about 15 to 20 minutes after he got there. This testimony is evidence to support the proposition that appellant's son was in the park and not in his house on the afternoon of July 16, 1993 at 1:30 p.m. It provides solid circumstantial evidence that appellant committed perjury when he said that he knew his son was at home at that same time.

Appellant now admits that his statement that his son was home at 1:30 on July 16, 1993 was not based on personal knowledge. He argues that a lack of personal knowledge is not the same thing as no conscious knowledge if he had reason to have a good faith belief that his sworn testimony was true. This is another way of arguing that he had no intent to deceive because he only intended to communicate a good faith belief, not his personal knowledge. We conclude that appellant's intent was a matter for the jury to discern in a case like this, where conflicting inferences could be drawn.

Viewing all of the evidence in the light most favorable to the verdict, we find the evidence sufficient to support the jury's finding on count one.

We overrule point of error one.

### COUNT TWO

■ In point of error two, appellant claims that the evidence is insufficient to sustain the jury's finding of guilty on count two of the indictment. That count charged that appellant committed aggravated perjury when he testified at the juvenile detention hearing that he (appellant) was home all day Saturday, July 17, 1993, when it was later shown that he worked the late shift on that date. Count two states:

Ronald Jesus Bonilla, Sr. hereinafter styled Defendant, on or about the 23rd day of August, A.D. 1993, ... did then and there with intent to deceive and with knowledge of the statement's meaning, intentionally and knowingly make a false statement under oath, and false statement being to-wit:

that the Defendant was home all day Saturday, July 17, 1993;

and said statement being authorized by law to be made under oath, and said statement was made during an official proceeding to-wit: a juvenile court, and said court having jurisdiction of said juvenile detention hearing and said statement made by the Defendant was material to the official proceeding, and the said statement was made after the Defendant was duly sworn by ... Clerk of the Court for said official proceeding;

Appellant contends that there was insufficient evidence to establish that he intended to deceive when he made the statement.

To interpret the meaning of this statement, we must examine it in the context in which it was made. At the detention hearing, appellant testified on cross-examination as follows:

Q: Let's go to Saturday the 17th. Did you work that day?

A: I was off.

Q: You were off.

A: I work Wednesday, Thursday and Friday, three twelves.

Q: You were off that Saturday and Sunday?

A: Saturday, Sunday, Monday, Tuesday.

Q: And were you home all day?

A: Yes.

Q: Did you ever leave the house?

A: No.

Q: And your testimony is that Jameslee never left the house?

A: Jameslee never left the house, yes.

This testimony was read into the record at appellant's perjury trial.

This testimony is meaningful in the context of appellant's request that the court release his son from detention. To that end, it was important that the court feel that appellant was providing proper supervision of his son. Appellant testified that, in his belief, he was exercising suitable supervision, care, and protection of his son. Appellant testified that he was off work Saturday, Sunday, Monday, and Tuesday. His sworn statement that he never left the house on those days sup-

ported the statement that his son was well supervised. Judge Blackstock testified that appellant's sworn statement at the detention hearing led him to believe that appellant was at home on July 16 and 17, and that this was the reason why he released Jameslee.

The State presented controverting evidence that appellant did, in fact, work on Saturday, July 17, and that he did, in fact, leave his house on July 17. Richard Dix, a security officer for the Texas Rose Hall in Alvin, testified that appellant began work there at 9:00 p.m. on Saturday, July 17, 1993. Benny Moore, the manager of the Texas Rose Hall testified that according to the payroll records, appellant worked there from 9:00 p.m. on Saturday, July 17, 1993 until 2:00 a.m. on Sunday, July 18, 1993. Appellant admitted that he left his house a little after 8:00 p.m. on July 17, 1983 to go to work at the Texas Rose Hall in Alvin. We hold that there is sufficient evidence that appellant committed perjury when he said he was off on Saturday, July 17, and that he was home all that day.

In an attempt to explain this inconsistency, appellant refers us to the dictionary meaning of the word "day." He claims that, by his statement at the detention hearing that he was home all day on the seventeenth, he meant during daylight hours. Appellant made this same argument to the jury, that by "all day" he meant "all day during daylight hours," and the jury obviously did not believe him. Faced with conflicting inferences, we must presume that the jury resolved any conflict in favor of the prosecution, and must defer to that resolution. *See Matson*, 819 S.W.2d at 846. It is not this Court's duty to realign or weigh the evidence. *Id.*

Viewing all the evidence in the light most favorable to the jury's verdict, we believe that a rational trier of fact could have found, beyond a reasonable doubt, that appellant had intent to deceive as to count two.

We overrule point of error two.

---

1. Whether a statement is material in a given factual situation is a question of law. TEX.PENAL

## State's Cross-point

In one cross-point, the State contends that the trial court erred in charging the jury that they must find, as an element of the first count, that the statement that appellant made under oath was false, when in fact, the State was required to prove only that he had no conscious knowledge whether the statement was true. Because of our disposition of appellant's points of error, we decline to address the cross-point.

We affirm the judgment of the trial court.

### ORDER ON MOTION FOR REHEARING

Appellant filed a motion for rehearing alleging that a portion of the Texas perjury statute is unconstitutional.[1] Although we overrule appellant's motion in this case, we address his ground for rehearing as a supplement to our original opinion.

■ Specifically, appellant points out that the United States Supreme Court, in *United States v. Gaudin*, found that materiality, in the context of a perjury prosecution, is a "mixed question of law and fact" and thus should go to the jury. — U.S. ——, ——, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995). The *Gaudin* Court held that the trial judge's refusal to submit the question of materiality to the jury was unconstitutional. *Id.* Thus, appellant argues that section 37.04(c) of the Texas Penal Code, which states that materiality is a question of law, is unconstitutional. Appellant further argues that because the issue of materiality did not go to the jury in this case, his conviction must be reversed.

■ We agree with appellant that *Gaudin* implicates the constitutionality of section 37.04(c) of the Texas Penal Code. However, rule 100(a) of the Texas Rules of Appellate Procedure restricts a motion for rehearing to "any matter *determined* by a court of appeals or any panel thereof." TEX.R.APP.P. 100(a) (emphasis added). Whether to consider a new ground raised for the first time on a motion for rehearing is a decision left to the sound discretion of the court of appeals. *Ro-*

CODE ANN. § 37.04(c) (Vernon 1994).

*chelle v. State,* 791 S.W.2d 121, 124–25 (Tex. Crim.App.1990); *Tallant v. State,* 742 S.W.2d 292, 294 (Tex.Crim.App.1987); *Perkins v. State,* 905 S.W.2d 452, 453 (Tex.App.—El Paso 1995, pet. ref'd).

In this case, the issue of "materiality" of the allegedly false statement was not argued by appellant in his points of error, but was raised for the first time in his motion for rehearing. In his points of error, appellant challenged only the sufficiency of the evidence to prove that he had "intent to deceive." Appellant never claimed, at trial or on appeal, that his statements were not material.[2] Based on this record, we exercise our discretion to decline to review this new ground regarding materiality because it was an uncontested issue at trial and on appeal.

We overrule appellant's motion for rehearing.

COHEN, Justice, concurring to order overruling motion for rehearing.

I agree with appellant that Tex.Penal Code Ann. § 37.04(c) (Vernon 1994) is unconstitutional for the reasons stated in *United States v. Gaudin,* —— U.S. ——, ——, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995). Thus, the jury instruction here was unconstitutional for the same reasons as the instruction in *Gaudin.*

Trial judges should no longer instruct juries that materiality is a question of law. Instead, they should instruct juries that materiality, like all other elements, must be proved by the State beyond a reasonable doubt. Tex.Penal Code Ann. § 2.01 (Vernon 1994).

---

2. If we were to reach the merits, we would find that any error was harmless beyond a reasonable doubt in this case. There was no dispute at trial about materiality, probably because materiality was obvious. *See Almanza v. State,* 686 S.W.2d 157, 174 (Tex.Crim.App.1984).