(941 P.2d 411)

No. 75,383

STATE OF KANSAS, *Appellee*, v. JERRY ARNOLD ROLLINS, *Appellant*.

Opinion filed June 20, 1997.

*Daniel E. Monnat*, of Monnat & Spurrier, Chartered, of Wichita, for appellant.

*Chris Biggs*, special prosecutor, *Julie McKenna*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., ROYSE and MARQUARDT, JJ.

GERNON, J.: Jerry Arnold Rollins appeals from his conviction of one count of perjury. Rollins alleges several points of error, including the contentions that the complaint was jurisdictionally defective, the trial court erred in denying his motion for judgment of acquittal, and the cumulative effect of trial errors denied him a fair trial.

In 1992, Rollins was the pastor of a church in Salina. Dana Flynn, a member of his congregation, was involved in a custody dispute with a former lover, Randy Sheridan, over their 8-year-old daughter, A.F. Sheridan retained Robert Pottroff as his attorney. At the time, Dana was married to Steve Flynn, and they had a son.

Pottroff testified that Steve told him that Rollins and Dana were having an intimate relationship and that Rollins was having significant contact with A.F. Pottroff also testified, over objection, that Steve had told him that he had problems with their son being "brainwashed." Pottroff decided to depose Rollins to establish the extent of Rollins' relationship with Dana and her daughter and to determine if Rollins' actions were a significant factor in the custody arrangement and the children's behavior.

During the deposition on November 3, 1992, Pottroff asked Rollins numerous questions, including where and how often he had seen A.F. outside of church, whether and how often Dana spent the night at Rollins' house and parked her vehicle in his garage, and how Rollins would define his relationship with Dana. Rollins' answers to these questions served as the basis for his perjury charge.

Julie McKenna, the Saline County Attorney, filed a joint complaint/information charging Rollins and Dana with one count of perjury on November 2, 1994. Before the preliminary hearing, McKenna asked the trial court to appoint the Geary County Attorney, Chris Biggs, as a special prosecutor in the case because the present case was related to a murder case Biggs was prosecuting in Geary County. The trial court refused to appoint Biggs as a special prosecutor but did allow him to appear pro hac vice.

Following the preliminary hearing, the trial court directed Biggs to file an amended charging document separating the charges against Rollins and Dana into individual counts. Biggs subsequently filed an amended complaint/information and signed the document as special prosecutor for Saline County. The State also filed a bill of particulars setting forth as follows a number of answers to questions propounded to Rollins by Pottroff at the deposition on November 3, 1992, concerning Rollins' relationship with Dana and A.F.:

"Q. Do you know [A.F.]?

"A. Yes.

"Q. On how many occasions have you seen her?

"A. During the time that she would attend church.

"Q. You've not seen her anywhere outside of the times that she attended church?

"A. No.

. . . .

"Q. Well, isn't it true that Mrs. Flynn has been spending the night with you on a regular basis over the last year at your house?

"A. I decline to answer your question.

"Q. Are you refusing to answer the question as to whether or not Dana Flynn sleeps with you every night? Are you refusing to answer?

"A. She does not.

. . . .

"Q. Why is it her car gets parked in your garage every night?

"A. Her car is not parked in my garage every night.

"Q. At least four or five times a week?

"A. No.

"Q. How often is it parked in your garage?

"A. Never.

. . . .

"Q. Do you have any explanation why her car would be pulled into your garage on a nightly basis?

"A. Why her car would be pulled into my garage on a nightly basis?

"Q. I think that was the question.

"A. Object to that.

"Q. What's objectionable about that, other than the obvious?

. . . .

"Q. Are you going to answer my question?

"A. No.

"Q. You're refusing to answer the question?

"A. No. It is not parked in my garage on a nightly basis, no.

"Q. On a least at three-times-a-week basis?

"A. No.

"Q. Once a week?

"A. No.

"Q. How often is it parked in your garage overnight?

"A. It hasn't been.

"Q. Never?

"A. It hasn't, to my knowledge, no."

. . . .

"Q. What is the current nature of your relationship with Dana Flynn?

"A. My current relationship with Dana Flynn?

"Q. Yes.

"A. I know her as a person, an acquaintance.

. . . .

"Q. Did you ever get surprised when Lee [Rollins' ex-wife] walked in on you and Dana?

"A. No."

At trial, the State called several witnesses, including Rollins' ex-wife and his neighbors, to establish that Rollins answered the questions falsely to diminish the extent of his relationship with Dana and A.F. The State also presented evidence of Rollins and Dana having a joint bank account from April 1992 to January 1993, numerous items addressed to Dana that were found in Rollins' house, and videotapes of Rollins checking the mail at Dana's residence and of Dana leaving Rollins' residence during the morning hours. The videotapes, however, were made after Rollins had given the sworn testimony in issue.

Ann and Larry Kohman, Rollins' neighbors, testified that they observed Dana entering and leaving Rollins' garage in her vehicle at all times of the day during the summer of 1992. Ann further noted that two children usually accompanied Dana whenever she came by or left Rollins' house. Ann stated that she would observe Dana's vehicle pull into his garage in the evening and leave the next morning. Larry also said that he observed Rollins with Dana and the two children in Rollins' yard several times.

At the close of the State's evidence, Rollins moved for judgment of acquittal, arguing the State had failed to present sufficient evidence to establish the alleged false statements set forth in the bill of particulars. The court denied the motion but removed from the jury's consideration Rollins' responses to those questions concerning whether he and Dana were ever surprised by his wife and the current status of his relationship with Dana. The court then submitted three sets of statements concerning how often Rollins had seen A.F., whether Dana had spent the night at his house, and whether she had parked her car in his garage overnight as the factual basis for the perjury charge in the verdict form to the jury. The court further instructed the jury that the statements were material as a matter of law to the underlying child custody action.

The jury subsequently found Rollins guilty. Rollins filed a motion renewing his request for judgment of acquittal or, in the alternative, for a new trial, but the motion was denied. The trial court also denied Rollins' motion for arrest of judgment. The court sentenced Rollins to 1-2 years' imprisonment but suspended execution of the sentence and placed him on probation for 2 years. Rollins timely appeals.

Additional facts will be presented as necessary to discuss the issues on appeal.

## WAS THE COMPLAINT JURISDICTIONALLY DEFECTIVE?

Rollins contends his conviction must be reversed because the amended complaint/information under which he was prosecuted was signed by Chris Biggs, the Geary County Attorney, as a special prosecutor for Saline County. Rollins claims the amended information is jurisdictionally defective because Biggs was not lawfully appointed or authorized to sign the instrument.

Rollins raised this issue in his post-trial motion for arrest of judgment, which is the proper procedure to challenge the jurisdiction of the lower court for a defective charging instrument. See *State v. Hall*, 246 Kan. 728, 760, 793 P.2d 737 (1990).

In denying the motion, the trial court found that while it appeared that Biggs could not be considered a special prosecutor, the Saline County Attorney designated him as a deputy or assistant county attorney. The court construed several statutes concerning county attorneys and found that the Saline County Attorney had the authority to designate Biggs as a deputy or assistant county attorney under K.S.A. 19-706b. The court noted that it was unfortunate that Biggs was labeled as a special prosecutor, but that was an insufficient reason to permit form to control over substance.

K.S.A. 22-3201(a) provides that a prosecution in a district court shall be upon a complaint, indictment, or information. Under K.S.A. 22-3201(b), any individual with knowledge of the facts may sign a complaint. However, an information must be signed by the county attorney, the attorney general, or any legally appointed assistant or deputy of either. K.S.A. 22-3201(b); see also *In re Broadhead*, 74 Kan. 401, 405, 86 Pac. 458 (1906) (No crime can be

prosecuted in a county attorney's county without his or her signature on the indictment or information.).

This jurisdictional question involves the interpretation of several statutes and, consequently, is a question of law. This court's scope of review is de novo. See *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

It is a fundamental principle of statutory construction that the legislature's intent controls when that intent can be ascertained. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). "[T]he legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results." *Todd v. Kelly*, 251 Kan. 512, 520, 837 P.2d 381 (1992). When a statute is plain and unambiguous, the court must give effect to the legislature's intent as stated rather than speculate what the law should be. *Martindale v. Tenny*, 250 Kan. 621, 626, 829 P.2d 561 (1992).

It could be argued that Biggs, as a duly elected county attorney, is legally authorized by the State of Kansas to sign any information or indictment in criminal actions in the state. K.S.A. 22-2202(12) states that an "information" is "a verified written statement signed by a county attorney or other authorized representative of the state of Kansas presented to a court, which charges the commission of a crime." However, since K.S.A. 22-3201(b) is the special statute concerning the charging document, its wording prevails over the general definition in K.S.A. 22-2202(12). See *State v. Reed*, 254 Kan. 52, 54, 865 P.2d 191 (1993).

Both Rollins and the State agree with the trial court that Biggs is not a "special prosecutor" because there is no indication that the Saline County Attorney or her assistants were absent or disabled to allow the appointment of a special prosecutor under K.S.A. 19-711 or K.S.A. 19-715. See *State v. Baker*, 249 Kan. 431, 443, 819 P.2d 1173 (1991) (A special prosecutor as mentioned in K.S.A. 22-2202[17] is one temporarily appointed to replace an absent county attorney under K.S.A. 19-711 or K.S.A. 19-715.).

Rollins and the State hotly dispute which statutes control this issue and the interpretations of those statutes.

Rollins maintains the relevant statutes governing the appearance of counsel are K.S.A. 22a-106(d) and K.S.A. 19-723, which, he contends, require the approval of the board of county commissioners before a special counsel is appointed and employed to assist the county attorney. He argues that since there is no evidence in the record that the Saline County Board of Commissioners approved of Biggs' appointment, he was not properly authorized as a special counsel.

The State argues that a county attorney is not required to obtain the prior approval of the board of county commissioners before designating a deputy or assistant because a county attorney is only required to consult with the commissioners when county funds are actually expended. The State reasons that since Biggs was not being compensated by Saline County for prosecuting this action, the commissioners' approval was not needed.

K.S.A. 22a-106(d) provides that "[n]otwithstanding any of the provisions of this act the district attorney, *with the approval of the board of county commissioners*, may appoint and employ special counsel when necessary to assist the district attorney in the discharge of his duties." (Emphasis added.)

K.S.A. 19-723, on the other hand, states:

"That when, in the judgment of the board of county commissioners of any county in this state, it becomes necessary or expedient, the said board of county commissioners may employ an additional attorney at law to assist the county attorney of its county in any specific investigation, prosecution or any civil or criminal matter involving the duties of said county attorney, and the said board of county commissioners may pay such attorney so employed reasonable compensation for his services, the same to be charged to the general fund of said county."

The State contends that K.S.A. 22a-106 does not apply to county attorneys. K.S.A. 22a-106 is part of legislation concerning district attorneys that was adopted after the statutes pertaining to county attorneys were enacted. See K.S.A. 22a-101 to 22a-108. K.S.A. 22a-108(b) expressly states that the provisions of K.S.A. 22a-102 to K.S.A. 22a-107 shall apply to the district attorney's office. K.S.A. 22a-107 further states that "[w]henever in any of the statutes of this state the term 'county attorney' is used, it shall be construed

to include district attorneys provided for by K.S.A. 22a-101 and 22a-108, unless the context otherwise requires."

The language in K.S.A. 22a-107 and K.S.A. 22a-108 does not support the interpretation that county attorneys are to be included in the term "district attorney" whenever that term is mentioned in a statute. Such a reading would be contrary to the express wording of the statutes and outside any reasonable legislative intent. Accordingly, the policies and procedures of county attorneys are not governed by those statutes which only pertain to district attorneys.

Moreover, K.S.A. 19-723 cannot be construed to govern the instant issue. K.S.A. 19-723 authorizes a board of county commissioners to employ an additional attorney to assist the county attorney in the investigation or prosecution of any civil or criminal matter involving the duties of the county attorney. As the trial court correctly found, this statute only limits the county attorney's authority to enter into any contract or agreement for the employment of an additional attorney where county funds are actually expended. Such a reading is consistent with K.S.A. 19-717, which allows a prosecuting witness to employ an attorney to assist the county attorney in performing his or her duty in a criminal action without having to obtain the county commissioners' prior approval.

The State relies on the trial court's finding that K.S.A. 19-706b authorizes a county attorney to designate a qualified individual as an assistant or deputy county attorney. The State contends this statute grants a county attorney broad discretion in designating a deputy or assistant as long as it is within the budget set by the county commissioners.

K.S.A. 19-706b states, in part:

"The board of county commissioners of any county having a population of not more than one hundred thousand (100,000) may allow to the office of the county attorney of such county such reasonable sums for salaries and compensation which will permit said county attorney to appoint such deputies and assistants as are necessary to properly expedite the business of his office. Said deputies and assistants shall have such powers and duties within the scope of the office of county attorney as are prescribed by the county attorney, and within the limits of the sums made available by the board of county commissioners, each such deputy and assistant shall receive an annual salary in an amount prescribed by the county attorney. Said board of county commissioners may authorize by resolution the

expenditure of an amount sufficient to pay the actual and necessary expenses incurred by any such deputy or assistant in the performance of his official duties, whether performed within or without such county."

K.S.A. 19-706b allows a county attorney discretion in appointing the number of deputies and assistants necessary to fulfill his or her duties so long as the compensation for their services does not exceed the budget made available by the board of county commissioners. These deputies and assistants have the same powers and duties as the county attorney. K.S.A. 19-706b.

It is worth noting that under K.S.A. 19-702, a county attorney has a duty to appear in the courts of his or her respective county and prosecute or defend on the State's behalf all suits, civil and criminal, arising under the laws of the State, in which the State or the respective county is a party or interested. There is no law that requires a county attorney to attend any court or do any business, civil or criminal, that requires his or her personal attendance outside his own county. See *Comm'rs of Leavenworth v. Brewer*, 9 Kan. 307, 318 (1872). However, there is also no law that prevents a county attorney from voluntarily appearing without compensation in another county to prosecute an action which arises in that county.

Here, it is clear from the record that the Saline County Attorney designated Biggs as the attorney who would prosecute the case. Although Biggs incorrectly signed the amended charging document as a special prosecutor for Saline County, this error is not a substantial defect in the charging document. Biggs, in essence, assumed the role of an assistant or deputy to the Saline County Attorney. Since there is no indication in the record that Biggs received compensation from Saline County for his services, the Saline County Attorney was not required to obtain the county commissioners' approval before appointing him as a deputy or assistant.

It is also worth noting that Biggs' appearance in the case was approved by the trial court. K.S.A. 22-2202(17) provides that a "prosecuting attorney" is "any attorney who is authorized by law to appear for and on behalf of the state of Kansas in a criminal case, and includes the attorney general, an assistant attorney general, the county or district attorney, an assistant county or district

attorney and any special prosecutor whose appearance is approved by the court." Since the trial court approved Biggs' appearance and he is authorized to appear on behalf of the State in a criminal case, he was legally authorized to prosecute the case in Saline County.

Rollins also argues that Biggs' designation as an assistant or deputy Saline County Attorney is a conflict of interest with his position as the Geary County Attorney. However, Rollins fails to realize that Biggs is prosecuting alleged violations of the laws of the State of Kansas on behalf of the State, not the county. See K.S.A. 19-702. Consequently, the amended complaint/information is not jurisdictionally defective because Biggs, as an assistant or deputy to the Saline County Attorney, was lawfully authorized to sign the document.

## WERE THE ALLEGED PERJURIOUS STATEMENTS MATERIAL AS A MATTER OF LAW?

Rollins next argues that the trial court erred in instructing the jury that the alleged perjurious statements were material as a matter of law. He contends the instruction violates his rights to due process of law and to a trial by jury.

"If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous." *State v. Whitaker*, 255 Kan. 118, 127, 872 P.2d 278 (1994).

The trial court instructed the jury on the issue of materiality as follows:

"As a matter of law the alleged existence of a relationship between Jerry Arnold Rollins and Dana Lynn Flynn, or between Jerry Arnold Rollins and [A.F.], on or about the 3rd day of November, 1992, was material in the underlying action for which the defendant's deposition was taken. It is for the jury to determine what testimony was given by Mr. Rollins at the deposition and whether the testimony was willfully and knowingly false."

At the instructions conference, Rollins objected to this instruction, arguing that it was, essentially, a directed verdict on the element of materiality. The trial court overruled the objection, noting that materiality is a question of law for the court. After trial, Rollins

raised this issue again in a motion for new trial in light of the United States Supreme Court's decision in *United States v. Gaudin*, 515 U.S. 506, 132 L. Ed. 2d 444, 115 S. Ct. 2310 (1995).

In denying Rollins' motion, the trial court distinguished *Gaudin*, stating:

"First, *Gaudin* construed a federal statute and the government conceded materiality was an element of the underlying offense. Neither circumstances is applicable in the case at bar. Second, the Kansas Supreme Court has repeatedly held 'materiality' is an issue to be decided by the trial court as an issue of law and not as a question of fact by a jury. It is apparent *Gaudin* does not answer the issue now before this court. Accordingly, it is the duty of this court under the principles of stare decisis and precedent to follow the clear line of Kansas authority."

In *Gaudin*, Gaudin was charged with making false statements on certain loan documents from the Federal Housing Administration, in violation of 18 U.S.C. § 1001 (1994). The trial court instructed the jury that the government was required to prove the alleged false statements were material to the activities and decisions of the governmental agency and that the issue of materiality was for the court to decide. On appeal, the parties agreed that materiality was a necessary element of the crime and that for a statement to be material in this context it must have " 'a natural tendency to influence, or [be] capable of influencing, the decision of the decision-making body to which it was addressed.' " 515 U.S. at 509 (quoting *Kungys v. United States*, 485 U.S. 759, 770, 99 L. Ed. 2d 839, 108 S. Ct. 1537 [1988]).

The United States Supreme Court noted that a defendant has a right under the Fifth and Sixth Amendments to the United States Constitution to have a jury determine guilt beyond a reasonable doubt on *every element* of a charged offense. The Court held that since materiality was an essential element of 18 U.S.C. § 1001, the trial court infringed on Gaudin's Fifth and Sixth Amendment rights by not submitting the issue of materiality to the jury. 515 U.S. at 518-19. The Court stated the trial court's failure to allow the jury to determine this issue essentially deprived Gaudin of his "historical and constitutionally guaranteed right . . . to demand that the jury decide guilt or innocence on every issue, which includes

application of the law to the facts." 515 U.S. at 513. The Court further noted:

"[W]e find nothing like a consistent historical tradition supporting the proposition that the element of materiality in perjury prosecutions is to be decided by the judge. Since that proposition is contrary to the uniform general understanding (and we think the only understanding consistent with principle) that the Fifth and Sixth Amendments require conviction by a jury of *all* elements of the crime, we must reject those cases that have embraced it." 515 U.S. at 518-19.

Here, Rollins argues that the trial court was obligated under the Supremacy Clause to follow the United States Supreme Court's decision in *Gaudin*. He contends that materiality is an essential element of perjury under the Kansas statute and, therefore, under the reasoning in *Gaudin*, the court's instruction violated his right for the jury to find him guilty on all elements of the crime charged. We agree.

The State attempts to distinguish *Gaudin* by arguing that the issue of materiality should only be submitted to the jury when materiality is an element of the crime or involves a mixed question of law and fact. The State contends that materiality is not an element under our perjury statute and, even if it is, the trial court's error in determining the issue was harmless. The State's arguments are not persuasive.

Article VI of the United States Constitution provides, in part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby."

In *Trinkle v. Hand*, 184 Kan. 577, 579, 337 P.2d 665, *cert. denied* 361 U.S. 846 (1959), the court recognized that "under this constitutional mandate the interpretation placed on the Constitution and laws of the United States by the decisions of the supreme court of the United States is controlling upon state courts and must be followed." The court further noted that this principle is true regardless of whether the views and prior decisions of the state courts are consistent with those decisions. 184 Kan. at 579.

In *Gaudin*, the Court did not address the issue of whether materiality was an essential element of an 18 U.S.C. § 1001 offense

because the government conceded that materiality was a necessary element of the crime.

Here, the parties dispute whether materiality is a necessary element under K.S.A. 1992 Supp. 21-3805. Therefore, we must determine whether materiality is an essential element of perjury under our statute before adhering to the Court's reasoning in *Gaudin*.

One of the fundamental rules of statutory construction is that criminal statutes are strictly construed against the State. *State v. JC Sports Bar, Inc.*, 253 Kan. 815, 818, 861 P.2d 1334 (1993). Moreover, " 'we may not give a different meaning to a word in a criminal statute than that word usually possesses.' " *State v. Frazier*, 248 Kan. 963, 971, 811 P.2d 1240 (1991) (quoting *State v. Trudell*, 243 Kan. 29, 34, 755 P.2d 511 [1988]).

As defined by K.S.A. 1992 Supp. 21-3805(a), "[p]erjury is willfully, knowingly and falsely swearing, testifying, affirming, declaring or subscribing *to any material fact* upon any oath or affirmation legally administered in any cause, matter or proceeding before any court, tribunal, public body, notary public or other officer authorized to administer oaths." (Emphasis added.)

The express language of the statute indicates that any false representations under oath must be on a material fact before an individual is subject to a criminal prosecution for perjury. Moreover, the court has repeatedly recognized that the false testimony must be on some material matter for it to constitute perjury under our criminal statute. See *State v. Frames*, 213 Kan. 113, 119, 515 P.2d 751 (1973); *State v. Elder*, 199 Kan. 607, 608, 433 P.2d 462 (1967); *State v. Smith*, 40 Kan. 631, 632, 20 Pac. 529 (1889).

Also, the pattern instruction for perjury, PIK Crim. 3d 60.05, also provides that the false representation be on a *material fact* or matter to establish the crime. We conclude that materiality is an essential element of perjury under K.S.A. 1992 Supp. 21-3805(a) and find that the state of the law on this issue, post-*Gaudin*, requires us to reverse.

The Kansas Supreme Court has consistently held that the issue of materiality in perjury cases is a question of law for the court to decide. *State v. Edgington*, 223 Kan. 413, 419, 573 P.2d 1059 (1978); *State v. Frames*, 213 Kan. at 119; *State v. Elder*, 199 Kan.

at 608. However, state courts are duty bound to follow the United States Supreme Court's interpretation of the Constitution. Consequently, given the Court's interpretation of the Fifth and Sixth Amendments in *Gaudin,* which is applicable in Kansas through the Fourteenth Amendment, we must conclude that the trial court infringed on Rollins' constitutional rights by ruling on the issue of materiality as a matter of law.

However, an error of constitutional magnitude is generally subject to the harmless error rule. In *State v. McClanahan,* 259 Kan. 86, 102, 910 P.2d 193 (1996), the court noted:

"An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. Before we may declare the error harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial."

Rollins argues that a harmless error analysis is not applicable in this situation because the trial court's error was a structural defect in the trial process. He relies upon *Sullivan v. Louisana,* 508 U.S. 275, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993), as support.

In *Sullivan,* the Court held that a constitutionally deficient instruction on reasonable doubt was not subject to harmless error review. The Court recognized that a harmless error review requires a court to determine the effect an error had on the verdict rendered. 506 U.S. 278-79. The Court noted, however, that while most constitutional errors are subject to such a review, some errors are of such a fundamental nature that they will always invalidate a conviction. The Court found that the entire premise for a harmless error analysis was absent in that case:

"There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object,* so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. [Citation omitted.] The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed

verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty." 508 U.S. at 280.

As Rollins notes, several courts have relied on *Sullivan* in ruling that the failure to submit the materiality issue to the jury in a false swearing case is reversible error per se. See, *e.g.*, *U.S. v. David*, 83 F.3d 638, 647 (4th Cir. 1996); *U.S. v. DiRico*, 78 F.3d 732, 736-38 (1st Cir. 1996); *U.S. v. Pettigrew*, 77 F.3d 1500, 1511 (5th Cir. 1996); *People v. Kobrin*, 11 Cal. 4th 416, 428-30, 45 Cal. Rptr. 2d 895, 903 P.2d 1027 (1995).

However, at least two other courts have applied, or would apply, a harmless error analysis to a *"Gaudin* error." See *U.S. v. Raether*, 82 F.3d 192, 194-95 (8th Cir. 1996); *Bonilla v. State*, 933 S.W. 2d 538, 544 (Tex. Crim. App. 1995); see also *State v. Pechan*, 554 N.W.2d 663, 665 (S.D. 1996) (*Gaudin* error not harmless, following the analysis in *Raether*). The *Raether* court found that the trial court's failure to let the jury decide the materiality issue was not harmless because the jury did not make an independent determination about materiality. 82 F.3d at 194. In contrast, the Texas court in *Bonilla* did not reach the merits of the *Gaudin* error but noted that if it had, any error was harmless because the issue of materiality was not contested at trial. 933 S.W.2d at 544.

We are required to reverse under either theory.

First, under the reasoning in *Sullivan*, since the element of materiality was withheld from the jury in this case, the jury did not render a verdict on that element of perjury. It logically follows that because the jury has not rendered a verdict that addresses every element of the charged crime, it has not rendered a verdict on that crime. See *Sullivan*, 508 U.S. at 278-81.

Second, the trial court specifically told the jury that the statements were material, and the record fails to reveal any indication that the jury made an independent determination on this issue. This court cannot speculate about what the jury would have decided if it had been properly instructed by the trial court. See *Sullivan*, 508 U.S. at 281. Under these circumstances, it cannot be said beyond a reasonable doubt that the instruction had little likelihood of changing the result of the trial. Thus, Rollins' conviction must be reversed.

Given our ruling on the materiality issue, we need not address the other issues raised by Rollins.

Reversed.