Lawrence **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–02–00648–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 10, 2003.

Supplemental Opinion Granting Rehearing
Jan. 15, 2004.

Rehearing Overruled Feb. 23, 2004.

⚷713

Ken Goode, Houston, for appellant.

Lawrence Rodriguez, Richmond, pro se.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Carol M. Cameron, Assistant District Attorney, William J. Delmore, III, Chief Prosecutor, Appellate Division, Houston, for appellee.

Panel consists of Justices TAFT, JENNINGS, and HANKS.

## MEMORANDUM OPINION

TIM TAFT, Justice.

A jury convicted appellant, Lawrence Rodriguez, of aggravated robbery and assessed punishment at 25 years' confinement. *See* TEX. PEN.CODE ANN. § 29.03 (Vernon 2003). We determine (1) whether the evidence was legally and factually sufficient to show that appellant used a deadly weapon, (2) whether appellant's trial counsel provided ineffective assistance due to allegedly deficient representation at the guilt/innocence stage, and (3) whether the trial court erred in entering a deadly-weapon affirmative finding in the judgment. We affirm.

### Facts

Lana Novack worked as a cashier at a Texaco station. One day around noon, a white male, later identified as Albert Hollaway, entered the store, walked to the counter, and announced, "this is a robbery." Novack saw that Hollaway had in his hand what appeared to be a knife with a black handle, and she was afraid that he would hurt her. Hollaway again announced "this is a robbery," and Novack backed away from the counter and started screaming.

After Hollaway started to jump on top of the counter, Novack ran to a nearby door. Before she exited, Novack saw that Hollaway had jumped on top of the counter and had started to remove the cash register. Novack's screams alerted an off-duty Harris County deputy, who was in a car in the station's parking lot.

Hollaway left the store, carrying the cash register, and ran toward a white van parked in an adjacent lot. Appellant was the driver of the van. The deputy pointed his gun at Hollaway and yelled at him to stop, but Hollaway got into the van on the passenger side. Appellant then drove out

of the parking lot at a high rate of speed. Another deputy sheriff and a deputy constable located the van, activated their emergency sirens, and pursued it for about a mile into a strip-center parking lot.

Three men, including appellant and Hollaway, got out of the van and began to flee on foot. The unidentified third man was arrested near the van. The deputies then located Hollaway, arrested him, and found in his possession the cash register and a knife with a black handle. Appellant was found crouching behind a clothing rack in a nearby store.

### Legal and Factual Sufficiency

In his first and second points of error, appellant contends that the evidence is legally and factually insufficient to show that he was a party to the use of a deadly weapon during the robbery.[1] Appellant complains that, other than Novack's testimony regarding the color of the knife, the record contains no description of the size and shape of the knife and that there was no evidence that Hollaway used or attempted to use the knife as a deadly weapon.

When conducting a legal-sufficiency review, we view the evidence in the light most favorable to the verdict and ask whether a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000); *Valencia v. State*, 51 S.W.3d 418, 423 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd). The fact finder may reasonably infer facts from the evidence before it, credit the

witnesses if it cares to, disbelieve any or all of the testimony proffered, and weigh the evidence in the manner it chooses. *Bruno v. State*, 922 S.W.2d 292, 293 (Tex. App.-Amarillo 1996, no pet.).

When conducting a factual-sufficiency review, we examine all the evidence neutrally and ask whether proof of guilt is so obviously weak or greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *King*, 29 S.W.3d at 563; *Valencia*, 51 S.W.3d at 423. If there is probative evidence supporting the verdict, we must avoid substituting our judgment for that of the trier of fact, even when we disagree with the fact finder's determination. *King*, 29 S.W.3d at 563. The trier of fact is the sole judge of the weight and credibility of the witness testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000).

A knife is not a deadly weapon per se. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App.1991); *Victor v. State*, 874 S.W.2d 748, 751 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). The State may show a knife to be a deadly weapon by its capacity to cause serious bodily injury or death. *Hawkins v. State*, 605 S.W.2d 586, 588 (Tex.Crim.App.1980); *Davidson v. State*, 602 S.W.2d 272, 273 (Tex.Crim.App. 1980). When, as here, the knife inflicted no wounds, its capacity to cause serious bodily injury or death may be shown by factors such as the manner of its use, size or sharpness of the blade, the use of any brandishing motions, threats made by the accused, the victim's fear of serious bodily injury or death, or the physical proximity of the accused and the victim. *See Victor*,

---

1. A deadly weapon is anything manifestly designed, made, or adapted for the purposes of inflicting serious bodily injury or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury. TEX. PEN.CODE ANN § 1.07(a)(17)(A), (B) (Vernon 2003). The trial court instructed the jury on the law of parties. TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 2003) (stating that defendant may be found guilty of offense if he solicited, encouraged, directed, aided, or attempted to aid another person to commit offense).

874 S.W.2d at 751; *Hicks v. State*, 837 S.W.2d 686, 690 (Tex.App.-Houston [1st Dist.] 1992, no pet.).

█ The deputies found a lock-bladed knife with a black handle on Hollaway after they arrested him. Novack testified that the knife found on Hollaway was "very similar" to the knife that Hollaway had used during the robbery, although she could not testify that it was the same knife. The blade of the knife, which was admitted into evidence, is 2.25 inches long, is one inch wide at its base, is serrated, and has a sharp tip. The knife has a black handle. Thus, because the knife found on Hollaway was admitted into evidence, there was no need for testimony about the size and shape of the knife, as appellant contends on appeal.

Novack testified that, during the robbery, she was standing behind the counter and that Hollaway approached her and stated, "This is a robbery." Hollaway initially stood on the other side of the counter, facing Novack, but then he produced a knife and jumped on top of the counter in the direction of Novack.

A security videotape was admitted into evidence at trial. It shows that, while on top of the counter, Holloway pointed the knife at Novack, who was only one or two feet away. Hollaway's jumping on top of the counter, the only barrier that separated him from Novack, and pointing the knife at Novack were implicitly threatening actions. Novack testified that, after Holloway jumped onto the counter, she backed away from the counter and started screaming, "No, no, no," believing that he was going to attack her. Novack also testified that she was afraid and that she believed that Hollaway might "harm [her] in very much of a way" or might even kill her. Appellant presented no evidence indicating that the knife was not a deadly weapon.

█ We hold that the evidence is legally and factually sufficient to show that the knife used during the robbery was a deadly weapon.

We overrule appellant's first and second points of error.

### Ineffective Assistance of Counsel

In his third point of error, appellant contends that his trial counsel provided ineffective assistance. Appellant complains that his trial counsel improperly questioned him about his "inadmissible prior convictions" on direct examination and also failed to do the following: to admonish him about the consequences of testifying; to object to questions about his prior convictions on cross-examination; to seek limiting instructions; and to object to the State's final argument.

To determine if a defendant has been denied effective assistance of counsel, we follow the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). First, appellant must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Howland v. State*, 966 S.W.2d 98, 104 (Tex.App.-Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim.App.1999). Second, appellant must establish that counsel's performance was so prejudicial that it deprived him of a fair trial. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Howland*, 966 S.W.2d at 104. Thus, appellant must show that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Howland*, 966 S.W.2d at 104. Appellant has the burden to establish both of these prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d

954, 956 (Tex.Crim.App.1998); *Davis v. State*, 830 S.W.2d 762, 765 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

An appellant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable, professional judgment. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

## A. Failure to Inform Appellant about Consequences of Testifying and to Prepare Appellant for Cross–Examination

Appellant first complains that his trial counsel provided ineffective assistance because she did not inform appellant about the consequences of testifying and failed to prepare him adequately for cross-examination by the State.

■ Immediately before appellant testified and outside the presence of the jury, appellant's trial counsel questioned appellant to show that she had previously admonished appellant about his decision to testify:

Trial counsel: And I have told you, consulted with you, not only here this evening, but in the holdover cells and in my visits to the jail, that you could testify if you want to on your own behalf, but that you don't have to, right?

Appellant: Right.

Trial counsel: And I have also gone over on more than one occasion the pros and the cons, meaning the good things and the bad things that could happen if you decide to testify and the things

that could happen if you decide not to testify?

Appellant: Yes, you have.

Trial counsel: And do you understand that if you decide to testify that certain things that have not been brought out in the trial, say, things about your criminal history, that have not been brought out, would be brought out if you took the witness stand.

Appellant: Right.

Trial counsel: And that you would be subject to cross-examination by the State of Texas?

Appellant: Right.

Trial counsel: And understanding all of that, and the pros and the cons, and the pitfalls of testifying on your own behalf, you have decided that that's what you want to do?

Appellant: Yes, I do.

Trial counsel: Okay. And that's your decision?

Appellant: Yes, I do.

Although the record does not reflect what appellant's trial counsel told appellant during her previous visits to the holdover cells and in jail, appellant admitted that, on previous occasions, his trial counsel had informed him of the consequences of testifying and about the possibility of cross-examination and impeachment with regard to his criminal history. Appellant's trial counsel also reiterated the potential consequences while questioning him prior to his testifying. Thus, the record indicates that appellant knowingly and voluntarily chose to testify after having heard about the potential consequences associated with taking the stand. *See Cooper v. State*, 769 S.W.2d 301, 305 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd).

■ With regard to appellant's complaint that trial counsel failed to prepare him adequately for cross-examination, we

will not speculate whether appellant's trial counsel was ineffective because the record is silent on whether and how counsel prepared appellant. *See McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996) (holding that claim of ineffective assistance of counsel must be firmly supported by record).

## B. Introduction of and Failure to Object to Prior Conviction Evidence

Appellant next complains that his trial counsel provided ineffective assistance in questioning him on direct examination about his remote prior convictions and in failing to object to the State's questioning of him about these prior convictions during cross-examination.

Prior to trial, appellant's trial counsel requested that the State give notice of its intent to use evidence of prior convictions, and the State filed notice that it intended to present evidence of appellant's 10 prior convictions. Appellant also filed a motion in limine, which the trial court granted, requesting that the State refrain from questioning appellant about his prior convictions until the court determined the admissibility of these prior convictions outside the presence of the jury. During direct examination, appellant's trial counsel questioned him about one of his prior convictions for robbery, which conviction was 11 years old:

> Trial counsel: I believe it's about 12 years ago you had a felony conviction out of Harris County; is that right?
>
> Appellant: That's correct.
>
> Trial counsel: And you went to prison on a robbery case, 12 years ago—or more than 12 years ago. Do you remember exactly when it was?
>
> Appellant: It was exactly in 1990 of September [sic], I did do that. And I did call the—I told my sister what I

had done and she advised me to turn myself in to the HPD.

> . . .
>
> Trial counsel: You turned yourself in. And did you plead guilty to that?
>
> Appellant: Yes, I was guilty.
>
> Trial counsel: And that was back in 1991, you were sent to prison and you did your time on that?
>
> Appellant: Yes, ma'am.
>
> Trial counsel: Why aren't you pleading guilty to this one?
>
> Appellant: Because I'm not guilty.

On cross-examination, the State elicited testimony from appellant that he had been convicted for misdemeanor theft in 2001, two robberies in 1991, promoting prostitution in 1990, theft in 1984, and theft in 1982. During cross-examination regarding the prior robbery convictions, appellant admitted his guilt, not only to the two robberies to which he had pleaded guilty in 1991, but also to two other robberies with which he had never been charged. Appellant's trial counsel did not object to this questioning.

Here, the State had already stated its intent to present evidence of appellant's prior convictions. Trial counsel elicited from appellant an admission that he was guilty of one prior robbery and then elicited from appellant his assertion that he was not guilty of the current robbery offense. Thus, the contrasting of appellant's admission of guilt of the prior robbery with appellant's assertion of innocence of the current offense appears to have been a matter of trial strategy. The strategy appears to have included allowing in both robberies for which appellant had entered pleas of guilty in 1991 and of which appellant admitted on cross-examination that he was guilty.

However, there is also a question as to whether appellant's prior convictions were

too remote to have been admissible under Texas Rule of Evidence 609(b). *See* Tex.R. Evid. 609(b). Rule 609(b) provides that evidence of a remote prior conviction is inadmissible if more than 10 years have elapsed since the date of the conviction or the witness's release from confinement, whichever is later. *See id.* If the remote convictions were inadmissible under Rule 609(b), then appellant's trial counsel could have had no reasonable trial strategy for failing to object to the admission of these convictions during cross-examination.

Appellant was sentenced to 15 years' confinement for the 1991 robbery conviction, although the record does not reflect the date on which appellant was released from confinement.[2] Even if appellant had served only one-fifth of his sentence—or three years—his conviction would not be remote under Rule 609(b). *See id.*

We reach the same conclusion if we consider only the dates of each conviction offered. *See Morris v. State,* 67 S.W.3d 257, 263 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). All of appellant's prior convictions were for felony offenses and were rendered more than 10 years before trial, except for appellant's 2001 conviction for misdemeanor theft. A misdemeanor theft conviction is a crime involving moral turpitude, and, therefore, it can be "tacked onto" remote convictions and cause them to be treated as not remote under Rule 609(a). *See Hernandez v. State,* 976 S.W.2d 753, 756 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd) (holding that appellate court may find that, although prior conviction is more than 10 years old, later convictions for felonies or misdemeanors involving moral turpitude remove taint of remoteness from prior convictions). Therefore, the remoteness alone of appel-

lant's prior convictions would not have made them inadmissible.

In determining whether appellant's trial counsel provided ineffective assistance, we must also consider whether the probative value of these convictions outweighed any prejudicial effect under Rule 609(a). *Id. Theus v. State* dictates that we should consider (1) the impeachment value of the prior crimes offered, (2) the temporal proximity of the past crimes relative to the charged offense, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *See id.,* 845 S.W.2d 874, 880 (Tex.Crim.App.1992).

The impeachment value of the prior convictions offered is proportional to the extent to which the crime involved deception. *Id.* at 881. The State elicited evidence that appellant had been convicted of two robberies, two felony thefts, one misdemeanor theft, and one offense of promoting prostitution. Appellant's prior convictions for theft are crimes involving deception. *See Jackson v. State,* 11 S.W.3d 336, 340 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). Although robbery contains theft or attempted theft as an element, it is unclear whether appellant's convictions for robbery and promoting prostitution relate to his propensity for deception. *See Simpson v. State,* 886 S.W.2d 449, 452 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (holding that, although robbery involves threat or use of violence, it is not clear whether robbery involves element of deception). This factor favors admissibility for the three theft convictions, but does not favor admissibili-

---

**2.** Appellant was convicted twice for robbery in 1991. For each conviction, the trial court assessed appellant's punishment at 15 years. The record shows that the sentences for each of these convictions were to run concurrently.

ty for the robbery and promotion-of-prostitution convictions.

Temporal proximity favors admissibility if the past crimes are recent and the witness has demonstrated a propensity for running afoul of the law. *Theus*, 845 S.W.2d at 881. Appellant had been recently convicted of misdemeanor theft in 2001. Appellant's other convictions were more than 10 years old. However, appellant's record includes 10 total prior convictions and demonstrates that appellant has a propensity for, and a history of, running afoul of the law. *See Jackson*, 11 S.W.3d at 340. This factor—temporal proximity—weighs toward admissibility of the prior convictions.

The next factor we consider is similarity of the past convictions. *See Theus*, 845 S.W.2d at 880. Similarity between the past crime and the current crime militates against admissibility, whereas dissimilarity between the past crime and the current charge favors admissibility. *See id.* at 881. Four of the six prior convictions presented at trial were not similar. Two of appellant's prior convictions were for robbery, a crime similar to the crime for which appellant was charged. For two of the prior crimes, the third factor weighs against admissibility, but for the other four, it weighs in favor of admissibility.

Finally, we look at the importance of appellant's testimony and the importance of his credibility. *See Theus*, 845 S.W.2d at 880. Appellant was driving the "getaway" van in which Hollaway fled after the robbery. Appellant claimed that he did not know that Hollaway had planned to rob the Texaco station or, after he and Hollaway drove away from the store, that Hollaway had actually robbed the store. Therefore, appellant's credibility was an issue of great importance. The State's need to impeach appellant's credibility was also great. We note, however, that the State could have relied on appellant's three prior theft convictions to impeach him, rather than presenting evidence of appellant's two prior robbery convictions, which involved the threat or use of violence and were, therefore, prejudicial. *See Simpson*, 886 S.W.2d at 452. Thus, the final two *Theus* factors could weigh against admissibility, at least with regard to appellant's prior robbery convictions and his promotion-of-prostitution conviction. However, as noted above, the contrasting of appellant's admission of guilt of the prior robberies with his assertion of innocence in this case could have been sound trial strategy.

■ An analysis under the *Theus* factors shows that the prior theft convictions were admissible and that the prior conviction for promotion of prostitution might have been admissible. Therefore, because it also appears to have been appellant's strategy to admit the prior robberies, we are unable to say that counsel's assistance was deficient or that appellant has shown that the result of the proceeding would have been different.[3] *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Howland*, 966 S.W.2d at 104. We thus hold that counsel's performance did not fall below the "objective standard of reasonableness under prevailing professional norms" and was not so prejudicial that it deprived appellant of a fair trial. *Ex parte Menchaca*, 854 S.W.2d 128, 132 (Tex.Crim.App. 1993); *Howland*, 966 S.W.2d at 104.

## C. Failure to Seek Limiting Instruction

■ Appellant also complains that his trial counsel provided ineffective assistance

---

**3.** We also note that the State did not mention appellant's prior convictions at any time during its closing argument.

in failing to request a limiting instruction relating to his prior convictions. However, the record shows that the trial court's charge included the following limiting instruction:

You are instructed that certain evidence was admitted before you in regard to the defendant's having been charged and convicted of an offense or offenses other than the one for which he is now on trial. Such evidence cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the weight you will give his testimony, and you will not consider the same for any other purpose.

Therefore, even if trial counsel erred in failing to request a limiting instruction, appellant cannot show that the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Howland,* 966 S.W.2d at 104.

## D. Failure to Object to Improper Argument by State

Finally, appellant argues that his counsel provided ineffective assistance by failing to object to the State's closing argument. Specifically, appellant complains that the State's argument was improper because the State repeatedly referred to appellant's prior convictions and because the State made remarks during final argument that appellant was a "four time robber," a "pimp," and a "robber."

■ The four general areas of permissible jury arguments are (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to argument of opposing counsel, and (4) pleas for law enforcement. *Albiar v. State,* 739 S.W.2d 360, 362 (Tex.Crim.App.1987); *Gonzales v. State,* 807 S.W.2d 830, 835 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd).

■ Because appellant admitted at trial that he had committed four robberies and had been convicted of promotion of prostitution, the State's argument fell within the permissible bound of proper argument as summation of the evidence and reasonable deductions from evidence. *See Gonzales,* 807 S.W.2d at 835.

We overrule appellant's third point of error.

## Deadly-Weapon Affirmative Finding

■ In his fourth point of error, appellant contends that the trial court erred in entering a deadly-weapon affirmative finding in the judgment. Appellant argues that, in the absence of a specific deadly-weapon finding or special issue submission to the jury, it is "impossible to tell whether the jury convicted appellant as a party or as a principal."

Here, the indictment alleged that appellant did "use and exhibit a deadly weapon, to wit: a knife." The trial court instructed the jury on the law of parties in its charge. The jury's verdict read "guilty of aggravated robbery, as charged in the indictment." The trial court entered the affirmative finding of a deadly weapon in the judgment by circling "Yes" on a pre-printed form. The form judgment did not provide a space for an entry indicating that appellant was convicted as a party and that the affirmative finding was based on appellant's knowledge that a deadly weapon would be used or exhibited during the robbery.

■ In a jury trial, a trial court is required to enter a deadly-weapon affirmative finding when (1) the jury has found guilt as alleged in the indictment and the deadly weapon has been specifically pled in the indictment; (2) the jury has found the

defendant guilty as alleged in the indictment, and, though not specifically pleaded as a deadly weapon, the weapon pled is *per se* a deadly weapon; or (3) the jury affirmatively answered a special issue on deadly-weapon use. *See Vasquez v. State,* 56 S.W.3d 46, 47 (Tex.Crim.App.2001). Once the jury makes the affirmative finding, the trial court must enter the affirmative finding in the judgment. *See Johnson v. State,* 6 S.W.3d 709, 714 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd).

Appellant cites *Mulanax v. State*[4] and *Pritchett v. State*[5] for the proposition that, when the jury is instructed on the law of parties, an affirmative finding must be entered in the judgment showing that the defendant used or exhibited the deadly weapon or that the defendant knew that a deadly weapon would be used or exhibited. However, these two cases were overruled by the Fourteenth Court of Appeals in *Sarmiento v. State. See id.,* 93 S.W.3d 566, 570 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (holding that, when use of deadly weapon is an element of offense, State automatically carries burden of proving defendant knew that deadly weapon would be used or exhibited in commission of offense, whether as party or principal). *Sarmiento* disposes of appellant's arguments.

Moreover, in *Johnson,* we held that, by finding a defendant guilty as alleged in the indictment, which charged the defendant with the commission of aggravated robbery with a deadly weapon, the jury "necessarily found that appellant knew a deadly weapon would be used" or exhibited. *See id.,* 6 S.W.3d at 714. Article 42.12 of the Texas Code of Criminal Procedure allows entry of an affirmative deadly-weapon finding in a judgment if a defendant knew

that the weapon would be used or exhibited. TEX.CODE CRIM. PROC. ANN. art. 42.12 (Vernon Supp.2003). Accordingly, we hold that the trial court did not err in entering a deadly-weapon affirmative finding in the judgment.

We overrule appellant's fourth point of error.

### Conclusion

We affirm the judgment of the trial court.

### SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

A jury found appellant, Lawrence Rodriguez, guilty of aggravated robbery and assessed his punishment at 25 years in prison. On July 10, 2003, this Court affirmed the judgment of the trial court in an unpublished opinion addressing three points of error raised by appointed appellate counsel. Appellant has filed a pro se motion for rehearing, contending, among other things, that insufficient evidence showed appellant's knowledge that his co-defendant would use or exhibit a deadly weapon during the robbery. We grant appellant's motion for rehearing, withdraw our original judgment, and issue this opinion supplementing the original opinion in this case, which we order now to be published. We reverse the judgment and render a judgment of acquittal.

### Whether to Consider New Issues Raised First on Rehearing

At the outset, the State urges this Court not to consider appellant's claims raised for the first time on motion for rehearing because to do so would frustrate the efficient and orderly administration of justice and overburden judicial resources.

4. 882 S.W.2d 68, 70 (Tex.App.-Houston [14th Dist.] 1994, no pet.).

5. 874 S.W.2d 168, 172 (Tex.App.-Houston [14th Dist.] 1994, pet. dism'd).

Nevertheless, whether to consider a new ground raised for the first time on motion for rehearing is a decision left to the sound discretion of the court of appeals. *Bonilla v. State*, 933 S.W.2d 538, 543 (Tex.App.-Houston [1st Dist.] 1995, no pet.). In *Bonilla*, we declined to address the appellant's new point raised for the first time on motion for rehearing when the appellant had not raised the issue either at trial or in his initial appeal. *Id.* at 544.

■ Here, however, appellant raises an issue that was the primary issue argued to the jury at trial. The circumstances in *Bonilla* also did not involve the situation here—one in which an indigent defendant is represented by appointed counsel who did not file a motion for rehearing or petition for discretionary review, thus leaving appellant to pursue the motion for rehearing pro se. Neither was our decision to consider appellant's newly raised issue in this case precipitously made, and it did not involve substantial court resources. First, a cursory review of the very brief record was all that was required to determine that there was no evidence proving that appellant knew that his co-defendant had used a deadly weapon. Second, a request for the State to provide a response to appellant's motion for rehearing likewise produced no reference to evidence from the record proving appellant's knowledge that his co-defendant was going to use, or did use, a deadly weapon during the robbery. Accordingly, under these circumstances, we exercise our discretion to consider new issues raised for the first time in appellant's pro se motion for rehearing.

### Sufficiency of the Evidence of Appellant's Knowledge of a Deadly Weapon

■ This is a case in which appellant was found guilty pursuant to the law of parties as the getaway driver for a co-defendant who committed an aggravated robbery at a convenience store. Thus, in order to find appellant guilty, the jury charge required the jury to find that appellant's co-defendant committed aggravated robbery by using or exhibiting a deadly weapon (a knife) and that appellant had the intent to promote or assist the commission of the offense and solicited, encouraged, directed, aided, or attempted to aid his co-defendant's commission of the offense. In order to find that appellant intended that an aggravated robbery be committed, it was necessary for the jury to find that he knew that his co-defendant was going to use a knife as a deadly weapon in the course of committing the robbery. *See Scott v. State*, 946 S.W.2d 166, 170 (Tex.App.-Austin 1997, pet. ref'd) (holding evidence insufficient to prove getaway driver a party to aggravated robbery in absence of evidence that defendant had entered into a conspiracy and agreed to become a party to aid in robbery by driving getaway car).

The record is devoid of any evidence that appellant knew that his co-defendant was going to use, or did use, a knife as a deadly weapon during the offense. The closest that the record comes to showing appellant knew about the knife was a leading question by the prosecutor to the complainant, asking, "And is this [the knife] what he had in his hand when he came into the store and said, this is a robbery?" The complainant answered, "It was a knife with a black handle. I can't tell you if that was the exact one. But it looks very similar." The complainant did not respond to another part of the prosecutor's questioning regarding appellant's having entered with the knife in his hand. A careful review of the surveillance camera tape and other evidence shows that appellant's co-defendant entered the convenience store from the direction of the van, located some distance away behind a dumpster, in which

van appellant was seated in the driver's seat. Nevertheless, the tape does not reveal that the co-defendant had the knife in his hand as he entered, and the complainant's answer to the prosecutor's leading question does not affirm that to be a fact, either. However, even if one were to make the inference that the knife was in the co-defendant's hand when he entered, there is no evidence that appellant saw it or otherwise knew about it. Neither is there any evidence that the knife was visible when the co-defendant exited the convenience store holding the cash register with both hands.

Although the jury was certainly entitled to disbelieve appellant's testimony that he was dozing in the van waiting for his co-defendant to go panhandle money to buy some items at the store, the disbelief of appellant's story does not amount to affirmative evidence of appellant's knowledge of any plan to use a knife. Appellant's testimony disclaiming his role as a getaway driver and knowledge of his co-defendant's having stolen the cash register was likewise entitled to disbelief because of the large size of the cash register and appellant's attempts to escape from a marked patrol car with lights and siren activated. Once again, however, the most that the jury could have legitimately inferred from disbelieving appellant was that appellant helped his co-defendant, who had robbed someone in the convenience store. In other words, it was legitimate to infer that appellant knew that his co-defendant had robbed someone in the store when he ran out with a large cash register in his hands because it is a fair inference that someone was inside manning the cash register and would not have voluntarily surrendered the register without someone using a threat or force. That appellant knew that his co-defendant used or exhibited a knife, however, is an inference too far, based on the record in this case. We hold that the evidence was legally insufficient to prove

appellant's guilt as a party to an aggravated robbery involving the use or exhibition of a knife as a deadly weapon, according to the law-of-parties theory presented to the jury in this case.

Accordingly, we sustain appellant's primary contention in his motion for rehearing. Having sustained this contention, it is unnecessary to address appellant's other contentions concerning ineffective assistance of counsel, factual insufficiency of the evidence, and inadequate jury instructions that failed to require a finding that appellant knew that a deadly weapon would be used or exhibited by his co-defendant.

### Conclusion

We withdraw our original judgment affirming the judgment of the trial court. We reverse the judgment of the trial court and render judgment that appellant be acquitted.