**Opinion issued January 9, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00893-CR

———————————

## DARRICK MOORE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1602316**

---

## MEMORANDUM OPINION

A jury found Darrick Moore guilty of the first-degree offense of making a

false statement to obtain property or credit valued at over $200,000.[1] Moore

---

[1] Moore's indictment alleged that he had made false statements to obtain credit and property valued at more than $200,000 pursuant to one scheme and continuing course of conduct from 2012 to 2014. In 2015, the legislature amended Penal

pleaded true to two enhancement allegations in the indictment. In accordance with the habitual offender statute, the jury assessed Moore's punishment at 35 years in prison.[2] Moore presents one issue in which he contends that the trial court abused its discretion by admitting into evidence for impeachment purposes his five prior convictions during his testimony in the guilt-innocence phase of trial.

Because we hold that the trial court did not abuse its discretion in admitting the evidence of Moore's prior convictions, we affirm the judgment of conviction.

## Background

In 2012, Moore began doing business with Matthew "Mackadoo" Adoe. Mackadoo was in the export business, shipping various goods, including motor vehicles, to Angola. As part of their agreement, Mackadoo would give large sums of cash to Moore to purchase vehicles for shipment overseas. Moore would later testify that, on one occasion, Mackadoo gave him $200,000 to purchase three specific vehicles. Moore claimed that he gave $150,000 of the $200,000 to Mitch Anjum, the finance manager of Global Motors, to purchase the vehicles. Moore

---

Code Section 32.32, raising the threshold amount for a first-degree felony from $200,000 to $300,000. *See* Act of May 31, 2015, 84th Leg., R.S., ch. 1251, § 16, 2015 Tex. Sess. Law Serv. 4208, 4215 (current version TEX. PENAL CODE § 32.32(b)). Any reference in our discussion to Section 32.32 is to the pre-amendment version of the statute.

[2] *See* TEX. PENAL CODE § 12.42(d) (providing that double-enhanced felony is punishable by imprisonment for life, or for any term of not more than 99 years or not less than 25 year).

averred that Anjum kept the money and failed to deliver the vehicles to him, leaving Moore indebted to Mackadoo.

To earn money to repay his debt, Moore began purchasing vehicles on credit to resell for a profit. One of these vehicles was a Mercedes Benz that Moore purchased in February 2014 from Autoplex, a car dealership. To purchase the vehicle, Moore filled out a credit application using another person's social security number. Moore was able to obtain a $31,000 loan to purchase the vehicle. Moore made only three payments on the loan, totaling $2,200, and then defaulted.

In 2013, Moore persuaded K. James and T. Ordone to assist him in the buying and selling of vehicles. In August and September 2013, Moore requested James to buy five cars that he identified for her to purchase. James bought each of these vehicles on credit. Among these was a Chrysler 300, a Dodge Ram, and a BMW. The loan amounts for the three vehicles were (1) $54,422.21 for the Chrysler 300, (2) $58,383.22 for the Dodge Ram, and (3) $44,303.87 for the BMW. Under Moore's direction, false information regarding James's income and her length of employment was given in the loan application for each of these vehicles.[3] James could not afford to make the payments on the loans and defaulted on each of them, resulting in repossession of the cars.

---

[3] The evidence at trial showed that it takes 30 to 45 days for a loan to appear on a credit report. As a result, unless disclosed by the borrower, a lender may not be aware that a borrower has recently taken out another loan.

In September and October 2013, Moore persuaded Ordone to purchase seven cars on credit. The cars Moore requested Ordone to purchase included a Mercedes, a Corvette, and a Cadillac. The loan amounts taken out by Ordone for these vehicles were (1) $45,843.80 for the Mercedes, (2) $59,562.31 for the Corvette, and (3) $30,490.70 for the Cadillac. The applications for these loans contained false information regarding Ordone's income and her monthly expenses.

Ordone later testified that she signed the loan applications, but she had not filled them out. She had given her financial information to Moore for the applications and had signed them at his direction. Ordone could not repay the loans. The Mercedes and the Cadillac were repossessed, and the Corvette was never recovered.

After a lengthy investigation by the Harris County District Attorney's Office, Moore was arrested in July 2017. He was charged with the first-degree-felony offense of making false statements to obtain property or credit valued at over $200,000. The indictment alleged that Moore had, "pursuant to one scheme and continuing course of conduct, for the purpose of obtaining credit, namely, a loan of money, a line and letter of credit, and furnishing property and services on credit," intentionally and knowingly made "material false and misleading written statement[s]" regarding his social security number, his residence, and his employment information on his credit application for a Mercedes motor vehicle.

4

The indictment also alleged that Moore made false statements on James's credit applications regarding James's income and her employment to obtain loans for a Chrysler 300, a Dodge Ram, and a BMW. The indictment further alleged that Moore made false statements on Ordone's credit applications regarding her residency, her income, and her monthly rental expenses to obtain loans for a Mercedes, a Corvette, and a Cadillac.

Before trial, the State notified Moore that it may seek to introduce evidence of his prior convictions for impeachment purposes if he testified. Specifically, the State notified Moore that it may seek to introduce the following prior convictions: (1) a 2001 felony theft; (2) a 2001 felony forgery–false information on a title; (3) a 2001 engaging in organized criminal activity; (4) a 2010 felony  false statement to obtain credit; and (5) a 2017 misdemeanor theft by check.

In response, Moore filed a motion to testify free of impeachment. He asserted that his prior convictions were inadmissible (1) under Texas Rule of Evidence 609, which governs under what circumstances prior convictions may be admitted for impeachment purposes, and (2) under the evaluative factors set out in *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992). The trial court did not rule on Moore's motion before trial.

The case was tried to a jury in September 2018. Among the State's witnesses was Lieutenant Investigator McGuire with the the Harris County District

Attorney's Office. He testified that he had reviewed credit applications for motor vehicles that were signed by Moore. The evidence showed that, between April 2013 and February 2014, Moore had purchased nine vehicles on credit.

To determine the accuracy of the information in Moore's loan applications, Lieutenant McGuire reviewed public record databases and subpoenaed records from financial institutions, credit bureaus, and auto dealerships. The investigation revealed that Moore had given false information in his credit application to buy the Mercedes from Autoplex. Lieutenant McGuire testified that the social security number Moore had provided on the application belonged to another person, that Moore had given false information about how long he lived at his current address, and that he had given inaccurate information about his employment status. Documentary evidence showed that the loan for the Mercedes was $31,187.81.

James and Ordone were also called to testify. James testified that Moore helped her get a job working for Mackadoo. Moore then asked her to help him purchase cars on credit, and she agreed. Among the vehicles she purchased on credit for Moore were the Chrysler 300, Dodge Ram, and BMW listed in Moore's indictment. The evidence showed that the loans for the Chrysler 300, Dodge Ram, and BMW totaled over $157,000.

James testified that Moore handled all the paperwork for the car loans. She said that the information regarding her salary and length of employment in the

credit applications were false. When she asked Moore how she could be approved for so many loans, Moore told her that all the vehicles needed to be purchased within a few weeks before any of them appeared on her credit report.

Moore assured her that he would give her money to make the car payments. He gave her one monthly payment and then did not give her any more money. She was unable to make the payments, and the vehicles were repossessed. James still owed over $100,000 on the car loans at the time of trial.

Ordone testified that she asked Moore to help her find a car to purchase for her own use, and he did. Moore then asked Ordone to help him buy a couple of cars. He told her that he already had buyers for the cars, but he could not purchase them because his credit was "tied up." Over the course of four weeks, Ordone purchased a total of seven high-end cars and a boat on credit for Moore. This included the Mercedes, Corvette, and Cadillac listed in the indictment. The evidence showed that the total amount for the loans was $135,896.81.

Ordone admitted that she signed the credit applications for all the loans; however, she said that she only filled out the first credit application herself, which was for the purchase of a Bentley. She testified that she had given her personal and financial information required for the other applications to Moore. Ordone testified that she was unable to make the loan payments, and all the vehicles were either

7

repossessed or never recovered. Ordone testified that she still owed $250,000 on the loans.

Moore had given Ordone's address as his place of residence on his credit application. However, Ordone testified that Moore never lived with her.

Moore also testified in his own defense during the guilt-innocence phase of trial. However, before he testified, the trial court conducted a hearing on Moore's motion to testify free from impeachment. Moore argued against admission of his prior convictions because they involved offenses similar to the offense here, making a false statement to obtain property or credit. He asserted that "admission for impeachment purposes of a crime similar to the crime charged presents the situation where the jury would convict on the perception of a past pattern of conduct instead of on the facts of the charged offense." He asserted that evidence of the prior convictions would be more prejudicial than probative.

The State argued in favor of admission of Moore's five prior convictions, asserting that his credibility was an important issue in this case. The trial court agreed with the State, ruling that Moore's prior convictions were admissible for impeachment purposes. The trial court found that Moore's credibility was a significant issue in the case and that "the probative value outweighs the prejudicial effect."

When he testified, Moore denied knowingly using someone else's social security number on his credit application to purchase the Mercedes. He stated that he had paid a credit repair company to clear his credit and that that the credit repair company had provided him with a "credit privacy number" to use as an alternate to his social security number. He stated that the credit privacy number was the number he had used on the credit application for the Mercedes. He claimed that he was unaware that the credit privacy number was someone else's social security number. Moore also testified that the information on his application regarding his employment history and length of residency were correct.

Moore acknowledged that Ordone had provided him with her credit information for the loan applications, but he denied that he filled out the applications. He said that Ordone had filled out the application for the first car she purchased, and after that, Mitch Anjum, the finance manager at Global Motors, had filled out the remainder of Ordone's applications. Moore also denied having any involvement with filling out James's credit applications for the vehicles that she purchased.

On cross-examination, Moore confirmed that he had been convicted of (1) felony theft in 2001; (2) felony forgery–false information on a title in 2001; (3) engaging in organized criminal activity in 2001; (4) felony false statement to obtain credit in 2010; and (5) a misdemeanor theft by check in 2017. In the charge,

the trial court instructed the jury that it could not consider evidence of these prior convictions "as any evidence of guilt in this case." Rather, the jury could consider the evidence "for the purpose of aiding you, if it does aid you, in passing upon the weight you will give [Moore's] testimony, and you will not consider the same for any other purpose."

The charge authorized the jury to convict Moore as a principal actor or as a party to the offense. The jury found Moore guilty as charged in the indictment. After he pleaded true to two enhancement allegations, the jury assessed Moore's punishment at 35 years in prison. This appeal followed.

**Admissibility of Prior Convictions**

In one issue, Moore contends that the trial court abused its discretion by permitting the State to admit into evidence for impeachment purposes his five prior convictions in violation of Texas Rule of Evidence 609. *See* TEX. R. EVID. 609.

**A.     Standard of Review**

We review a decision to admit impeachment evidence of prior convictions under Rule 609 for an abuse of discretion. *Theus*, 845 S.W.2d at 881. A trial court's decision will be deemed an abuse of discretion only if it lies outside the zone of reasonable disagreement. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)). The party seeking to introduce the evidence has the burden to satisfy Rule 609's requirements for admissibility. *See id.* at 880.

10

**B.     Analysis**

Rule of Evidence 609 sets out the circumstances in which evidence of a witness's prior convictions may be admitted into evidence. *See* TEX. R. EVID. 609. The rule's subparts provide different standards for admissibility depending on whether the prior "conviction or release from confinement" occurred more than or less than ten years before the trial at which admission of the evidence is sought. *See id.* R. 609(a)–(b). Subpart (a) of the rule applies to a prior conviction or release occurring less than ten years before the trial, and subpart (b) applies to a prior conviction or release occurring more than 10 years before trial. *See id.*

**1. Prior Convictions Less than 10 Years Old**

Because Moore's 2010 felony conviction for false statement to obtain credit and his 2017 misdemeanor conviction for theft by check were less than 10 years before the 2018 trial, we examine whether the admission of evidence regarding those convictions complied with the requirements of Rule 609(a). *See id.* R. 609(a). Under Rule 609(a), "[e]vidence of a criminal conviction offered to attack a witness's character for truthfulness must be admitted if: (1) the crime was a felony or involved moral turpitude, regardless of punishment;[4] (2) the probative value of the evidence outweighs its prejudicial effect to a party; and (3) it is elicited from

---

4     Even though Moore's 2017 conviction was for misdemeanor, theft by check is a crime involving moral turpitude. *See Ex parte De Los Reyes*, 392 S.W.3d 675, 676 (Tex. Crim. App. 2013) (stating that theft is crime of moral turpitude).

11

the witness or established by public record." *Id.*

In *Theus*, the Court of Criminal Appeals set out a test for determining whether the probative value of a conviction outweighs its prejudicial effect under Rule 609. *Theus*, 845 S.W.2d at 880. Under that test, courts consider the following nonexclusive factors: (1) the impeachment value of the prior crime; (2) the temporal proximity of the conviction relative to the offense being tried and the witness's subsequent history; (3) the conviction's similarity to the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the witness's credibility. *Id.* We apply the *Theus* factors to determine whether the trial court properly exercised its discretion by admitting the 2010 and 2017 convictions pursuant to Rule of Evidence 609(a) *See id.* at 880–82 (applying factors in Rule 609(a) analysis).

Regarding the first *Theus* factor, the impeachment value of a crime involving deception is higher than for a crime involving violence. *Id.* at 881. Because theft by check and false statement to obtain credit are both crimes of deception, this factor weighs in favor of admission. *See* TEX. PENAL CODE § 32.32(b) (required element of offense of false statement to obtain credit is intentionally or knowingly making materially false or misleading written statement); *Rodriguez v. State*, 129 S.W.3d 551, 559 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (recognizing theft as crime involving deception).

12

Under the second *Theus* factor, temporal proximity weighs in favor of admissibility if the past crimes are recent and the witness has demonstrated a propensity for running afoul of the law. *Theus*, 845 S.W.2d at 881. Here, the indictment alleged that Moore engaged in a course of conduct of making a false statements to obtain credit from 2012 to 2014. Shortly before the charged offense, Moore had been convicted of the offense of making a false statement to obtain credit in 2010. And, only three years after 2014, Moore was convicted of misdemeanor theft in 2017. In addition, Moore had been convicted of three offenses in 2001. Given the temporal proximity of the 2010 and 2017 offenses and Moore's "demonstrated . . . propensity for running afoul of the law," the second *Theus* factor weighs in favor of admission of the two convictions. *See id.*

The third *Theus* factor requires consideration of the similarity of the prior convictions to the current offense. *See id.* at 880. If the past crime is similar to the charged crime, this factor will "militate against admission" for impeachment purposes because there is a greater danger that the jury will convict on a perception of a pattern of past conduct. *Id.* at 881. Here, the 2010 conviction was for the same offense—making a false statement to obtain credit—as the charged offense. And the 2017 conviction for theft also involves an offense similar to the offense of making a false statement to obtain credit. Therefore, the third factor weighs against admissibility of the prior convictions.

Finally, under the fourth and fifth *Theus* factors, we must consider the importance of Moore's testimony and the importance of his credibility. *Id.* at 880–81. Here, with respect to the loan he obtained to purchase the Mercedes, Moore testified that he did not intentionally or knowingly use another person's social security number on the credit application. He testified that a credit repair company had provided him with a "credit privacy number" to use as an alternate to his social security number, which he believed was a legitimate alternative.

Moore also testified that the information on his application regarding his employment history and length of residency were correct, contrary to the evidence offered by the State. The address provided by Moore on the application was Ordone's address, and he claimed that he was living with her at the time he signed the application. However, Ordone testified that Moore never lived with her.

Moore also attempted to distance himself from the false information provided in James's and Ordone's credit applications. He claimed that the two women had either filled out their own credit applications or the applications had been filled out by Anjum. At the conclusion of the hearing on the prior convictions, the trial court found that Moore's credibility was a significant issue, and we agree. Moore's defense hinged on his testimony, highlighting the importance of his testimony and his credibility. Therefore, the last two *Theus* factors weigh in favor of admission of Moore's 2010 and 2017 convictions. *See id.*

14

at 881.

We conclude that the record supports a determination that four of the five *Theus* factors favored admission of Moore's 2010 conviction for making a false statement to obtain credit and his 2017 conviction for theft by check, supporting the trial court's determination that the probative value of evidence of those convictions outweighs its prejudicial effect. *See* TEX. R. EVID. 609(a). We hold that the trial court did not abuse its discretion in admitting evidence of these two convictions under Rule of Evidence 609(a). *See id.*

## 2. Prior Convictions More than 10 Years Old

Because Moore's 2001 convictions for (1) felony theft, (2) forgery–false information on a title, and (3) engaging in organized criminal activity occurred more than ten years before the 2018 trial, we examine whether the admission of evidence regarding those convictions complied with the requirements of Rule 609(b). *See id.* R. 609(b). Under Rule 609(b), evidence of a conviction is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. *See id.*; *Meadows v. State*, 455 S.W.3d 166, 170 (Tex. Crim. App. 2015). The *Theus* factors also apply when considering admissibility of prior convictions under Rule 609(b). *See Leyba v. State*, 416 S.W.3d 563, 571 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (applying factors in Rule 609(b) analysis).

Here, the first *Theus* factor—the impeachment value of the offenses—favors admission of the 2001 convictions because they involve deception. *See Theus*, 845 S.W.2d at 881. Theft and forgery have been recognized as crimes of deception. *See Rodriguez*, 129 S.W.3d at 559 (recognizing theft as crime involving deception); *Woodall v. State*, 77 S.W.3d 388, 395 (Tex. App.—Fort Worth 2002, pet. ref'd) (recognizing that forgery is crime of deception).

The record also indicates that Moore's 2001 conviction for engaging in organized criminal activity was a crime of deception. As relevant here, a person commits the offense of engaging in organized criminal activity if, intending to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit the felony offense of making a materially false or misleading written statement to obtain credit. *See* TEX. PENAL CODE §§ 71.02(a)(8), 32.32(b).

At the hearing on the admissibility of the prior convictions, the parties and the trial court discussed the 2001 organized criminal activity conviction in the context of referencing the fact that Moore had initially been charged with organized criminal activity in this case and mentioning that James and Ordone had been charged with organized criminal activity. When considered in the context of the hearing, it is apparent that the 2001 organized criminal activity conviction concerned the same type of activity as involved in this case, that is, the making of

16

false statements to obtain credit. Thus, the 2001 organized criminal activity conviction also involved a crime of deception. *See id.* §§ 71.02(a)(8), 32.32(b).

The second *Theus* factor considers temporal proximity and later conviction history. *See Theus*, 845 S.W.2d at 881. The 2001 convictions occurred 17 years before the 2018 trial. These convictions are not recent, and this would seemingly weigh against admission. *See id.* However, when considered along with Moore's entire conviction history, the scale tips in favor of admission.

Moore was convicted of five crimes between 2001 and 2018. The second *Theus* factor favors admission of recent past crimes if the witness has "demonstrated a propensity for running afoul of the law." *Id.*; *see Meadows*, 455 S.W.3d at 170 ("In deciding whether, in the interests of justice, the probative value of a remote conviction substantially outweighs its prejudicial effect, a court may consider all relevant specific facts and circumstances, including whether intervening convictions dilute the prejudice of that remote conviction"); *Bello v. State*, No. 05-14-00284-CR, 2015 WL 2358173, at *2 (Tex. App.—Dallas May 15, 2015, no pet.) (mem. op., not designated for publication) (intervening convictions diluted prejudice in admitting 16-year-old crime). Here, Moore's crimes are nearly evenly spread over the 17-year period between his 2001 convictions and the 2018 trial, demonstrating Moore's law-breaking propensity and weighing in favor of admission under the second *Theus* factor.

The third *Theus* factor considers the similarity of the 2001 convictions to the charged offense. *See Theus*, 845 S.W.2d at 881. Like the charged offense of making a false statement to obtain credit, the 2001 offenses of theft, forgery-false information on a title, and engaging in organized criminal activity (as discussed above) are crimes of deception involving the wrongful acquisition of property. Therefore, the third *Theus* factor weighs against admission of the 2001 convictions.

The fourth and fifth factors—the importance of the defendant's credibility and testimony—weigh in favor of admission of the 2001 convictions. *See id.* As discussed, Moore's defense to the charged offense of making a false statement to obtain credit relied almost exclusively on his testimony. He testified that he had not knowingly or intentionally used another person's social security number on the credit application. Moore claimed that the number he used on the credit application was a credit privacy number, which he had been assigned by a credit repair company and which he believed was a proper and legal means to obtain credit. Moore also testified that he had been living with Ordone when he filled out the application and that the residency information that he provided was accurate. This was contrary to Ordone's testimony that Moore had not lived with her. And Moore testified that his employment information was accurate on the credit application despite evidence presented through Lieutenant McGuire that the information was not accurate. Finally, Moore's testimony minimized his involvement with the loans

obtained by Ordone and James. As found by the trial court, we agree that the credibility of Moore's testimony was of significance to his defense, demonstrating a need by the State to impeach his credibility. Therefore, the fourth and fifth *Theus* factors weigh in favor of admission of Moore's 2001 convictions.

We conclude that the record supports a determination that four of the five *Theus* factors favored admission of Moore's 2001 convictions, supporting the trial court's implied finding that its probative value, supported by specific facts and circumstances, substantially outweighed its prejudicial effect. *See* TEX. R. EVID. 609(b). We hold that the trial court did not abuse its discretion in admitting evidence of the 2001 convictions under Rule of Evidence 609(b). *See id.*

We overrule Moore's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).