Opinion filed February 14, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00050-CR

_____

## JAMES ANDREW RICHARDSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR39200**

## M E M O R A N D U M   O P I N I O N

James Andrew Richardson appeals his conviction of aggravated robbery. The jury found Appellant guilty, found the enhancement allegations to be "true," and assessed punishment at confinement for sixty years. The trial court sentenced

Appellant accordingly.  In three issues, Appellant challenges the sufficiency of the evidence and two evidentiary rulings by the trial court.  We affirm.

## I. *The Charged Offense*

Section 29.02(a) of the Penal Code defines robbery as follows:  "A person commits an offense if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."  TEX. PENAL CODE ANN. § 29.02(a) (West 2011).  The offense becomes aggravated if the person "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2).

Appellant was convicted as a party to an aggravated robbery.  A person is criminally responsible as a party to an offense if "the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a).  A person is criminally responsible for another person's conduct if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

## II. *Evidence at Trial*

Jesse Don Spain testified that on August 12, 2011, he was asleep on his couch in his apartment when, just before 5:00 a.m., he heard a knock on his door. Spain opened the door and saw Appellant and Sandrella Lakay Hill, whom he knew because Hill had been in his apartment five or six times before.  Appellant was Hill's boyfriend.  Spain told them to go away, closed the door, and went back to bed, but they knocked on the door again a few minutes later.  Spain yelled through the door for them to go away; after they would not leave, Spain got up and unlocked the door "to give them a piece of [his] mind."  As soon as Spain turned the doorknob, Appellant pushed the door in and knocked Spain over a loveseat.

2

Appellant immediately jumped on Spain and swung at Spain with his fist. As Appellant and Spain wrestled, Hill took scissors that were on Spain's end table and stabbed Spain in the stomach. Appellant then pinned Spain's head down so that Spain could not move, and Hill unplugged an upright four-foot fan and used it to hit Spain in the face. Appellant continued to hold Spain's head down so that Hill could hit Spain with the fan at least four times; Appellant also choked and punched Spain throughout the assault.

Meanwhile, Hill unplugged Spain's television, but when Spain started to escape from Appellant's hold, Spain heard Hill walk into the kitchen and rummage through the silverware. Hill took a steak knife from the silverware drawer and stabbed Spain in the back three times while Spain struggled with Appellant. When Hill tried to stab Spain in the head, Appellant told Spain, "If you don't quit fighting and be quiet, we're going to stab you in your head." Spain thought that they were going to kill him.

Appellant then "started to get serious about choking [Spain]" and attempted to smother Spain with some curtains that had been pulled down. Hill pulled the television to the end of the piece of furniture that it rested on, and the next time Spain looked over, the television was outside the apartment on the porch. As Spain gasped for breath and gathered himself, Appellant and Hill left the apartment and took the television from the porch. Spain did not see who carried away the television.

Appellant and Hill testified to a different version of events than Spain. Hill testified that, on the night of the alleged robbery, she and Appellant were at Hill's mother's apartment when they decided to stop by Spain's apartment in the complex across the street. According to Hill, Spain had called her earlier that day and told her to come to his apartment, but she did not go at the time. Hill had known Spain about six or seven months, and at his invitation, she had been to his

apartment approximately four times before. Hill decided to go to Spain's apartment on the night of the alleged offense because Spain had offered to give her money before and she wanted to see if she could get some money that night.

Hill and Appellant walked to Spain's apartment and knocked on the door. Hill testified that Spain opened the door and invited them in and that neither she nor Appellant used any physical force to enter the apartment. While inside, Hill saw Spain and Appellant smoke crack cocaine out of a pipe supplied by Spain. Spain asked Hill if she wanted to spend the night, and when she said no, Spain asked her if she wanted to have sex for payment. Hill did not agree to have sex with Spain, but agreed to "playing with him, masturbating, whatever" for $40. Thereafter, Hill and Spain went into the bedroom while Appellant sat on the couch in the living room. Spain gave Hill $40, and Hill began to perform a sexual act on him. However, when Hill refused to have intercourse, Spain became angry; Hill opened the bedroom door, left the money in the bedroom, and went into the living room where Appellant was sitting.

Still angry, Spain followed Hill into the living room and aggressively pushed Appellant. Spain and Appellant started to fight and wrestle each other using their fists. Hill said that she did not observe anyone use a weapon and that she was never involved in the altercation between Spain and Appellant. During the fight, Appellant and Spain started to knock things over, including a fan and the television. After they fought for five or ten minutes, Appellant and Hill left the apartment. Hill said that Appellant took the television because it was broken after it fell during the fight. Hill said that she never entered the kitchen and that Spain was not stabbed while she and Appellant were inside Spain's apartment.

Appellant testified that he and Hill were at Hill's mother's apartment when Hill decided that she wanted to go to Spain's apartment because he had called her to come over earlier. Although Appellant did not necessarily want to go because

4

he did not want his girlfriend messing with another man, Appellant agreed to go because Hill said that Hill would just have to sit there and Spain would give her money. When Appellant and Hill got to Spain's apartment, Spain opened the door and let them inside because Appellant had some crack cocaine to smoke with Spain. Appellant had been to Spain's apartment and smoked crack cocaine with him on prior occasions. After Appellant and Spain smoked crack cocaine, Spain and Hill went into the bedroom while Appellant remained in the living room. Around forty-five minutes later, Hill came out of the bedroom and told Appellant that "[Spain's] thing won't get hard." Shortly thereafter, Spain came out of the bedroom and was angry that Hill "didn't finish." When Appellant "snickered" at Spain, Spain became angrier and told Appellant and Hill to "get out of here."

Spain pushed at Appellant's face. Appellant sidestepped him, and Spain fell on the table that held the television. The television fell off the table and broke. At that point, because Appellant was angry that he had hurt his wrist in the altercation, he stomped on the television with his foot.

Appellant testified that he was not the aggressor but that he was defending himself at all times. Although Appellant admitted to punching and elbowing Spain in the face, Appellant said that he never saw a knife or scissors and also that no one ever stabbed Spain while they were in the apartment. Hill remained in the apartment screaming at him and Spain throughout the altercation, and Appellant never saw Hill engage in any physical contact with Spain. After Appellant stomped the television, Appellant picked it up and threw it over the ledge of the second-story apartment. Appellant then left the apartment with Hill.

Bradley Barnes, a patrol officer for the City of Midland Police Department, testified that he responded to a burglary call at Spain's apartment around 4:00 a.m. or 5:00 a.m. on the date of the alleged offense. When Spain answered the door, his emotional state was "pretty hysterical," and he had blood on his face, hands, and

5

abdomen.  Spain had lacerations and swelling on his face and stab wounds on his abdomen, back, and flank.  Spain subsequently identified Appellant and Hill as his attackers.

Brenda Joyce Hamilton testified that her son, Appellant, called her from the jail several times after the alleged robbery.  During one of those phone calls, Appellant said to Hamilton: "Remember what I told you, Mama.  He had a big old TV.  I put it in front of someone's house.  I couldn't carry it.  I was walking on [foot]."  Appellant also said, "That man needs to be paid off," and "He wants his TV back."  Furthermore, on cross-examination, the State elicited testimony from Hill in which she admitted to telling Appellant that she was going to keep herself out of jail and that she would do what she needed to do to keep them both out of prison.

### III. *Issues Presented*

Appellant presents three issues for review.  First, Appellant contends that the evidence was factually insufficient to support his conviction.  Second, Appellant contends that the trial court abused its discretion when it admitted evidence of Appellant's prior convictions that were over ten years old during the guilt/innocence phase of the trial.  Third, Appellant contends that the trial court erred when it excluded evidence of past sexual encounters for payment and drug transactions between the alleged victim and Appellant's codefendant.

### IV. *Sufficiency of the Evidence*

In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction.  According to Appellant, after considering all of the evidence in a neutral light, the jury was not rationally justified in finding guilt beyond a reasonable doubt because the evidence contrary to the verdict is compelling.  We disagree.

6

## A. Standard of Review

Appellant's argument rests on a factual sufficiency review that considers all of the evidence in a neutral light. However, in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), the Court of Criminal Appeals held that there is no meaningful distinction between the factual sufficiency and legal sufficiency standards of review; therefore, we review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks*, 323 S.W.3d at 912; *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd).

Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The standard of review is the same for direct and circumstantial evidence cases. *Isassi*, 330 S.W.3d at 638.

## B. Applicable Law

In order to find Appellant guilty of aggravated robbery as a party, the jury was required to find that Hill committed aggravated robbery by using or exhibiting a deadly weapon (a knife) and that Appellant, acting with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid Hill in committing the offense. *See Rodriguez v. State*, 129 S.W.3d 551, 563 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

7

In determining whether an individual is a party to an offense, the reviewing court may look to events before, during, and after the commission of the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). A court may also rely on circumstantial evidence to prove party status. *Id.* Mere presence of a person at the scene of the crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense; there must be sufficient evidence of an understanding and common design to commit the offense. *Id.* Each fact need not point directly to the defendant's guilt so long as the cumulative effect of the facts is sufficient to support the conviction under the law of parties. *Id.*

*C. Analysis*

In this case, the jury's finding of guilt turned on whether it believed Spain's account rather than that of Appellant and Hill. Giving full credit to the factfinder's duty to resolve conflicts in testimony, the cumulative effect of the evidence is sufficient to prove that Hill committed an aggravated robbery by using or exhibiting a deadly weapon. Spain testified that Appellant and Hill pushed in his front door and physically assaulted him while Hill unplugged Spain's television. During the scuffle between Appellant and Spain, Hill stabbed Spain with scissors and a steak knife, and Hill hit Spain in the head with an upright fan. Thereafter, Appellant and Hill left with the television. From the foregoing evidence, the jury could rationally infer that Appellant and Hill forcefully entered Spain's home with the intent to obtain or maintain control of his property. Further, given Spain's testimony regarding Hill's use of a steak knife to stab Spain and the photographs of Spain's stab wounds and injuries to his face, the jury could also rationally infer that Hill intentionally used the steak knife as a deadly weapon in the commission of the robbery.

Furthermore, the evidence is sufficient to show that Appellant was guilty as a party to the offense. Spain described Hill as "a very small lady" who was 5'1" or 5'2" and "maybe 85 pounds," and Spain testified that Hill would not have been able to enter the apartment or to get a knife from the kitchen to stab him without Appellant's assistance. In addition, Spain testified that Appellant held Spain down and choked him so that Hill had "a clear shot" at Spain, and Appellant told Spain, "If you don't quit fighting and be quiet, we're going to stab you in your head." However, when a defendant is charged as a party to an aggravated robbery with a deadly weapon and there is no evidence that the defendant was the principal actor—that is, that he is the person who used or exhibited the deadly weapon—the State must also prove that the defendant knew that the deadly weapon would be used in the commission of the offense. *See Rodriguez*, 129 S.W.3d at 563; *Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). This generally requires the State to submit evidence of a previous agreement between the defendant and the principal actor or to show that the defendant was aware that the principal actor had access to a deadly weapon that could be used in the course of the robbery. *See Gross*, 380 S.W.3d at 187–88; *Wooden v. State*, 101 S.W.3d 542, 548–49 (Tex. App.—Fort Worth 2003, pet. ref'd).

We recognize that there is no explicit evidence of any prior agreement between Appellant and Hill, and Spain's testimony established that Hill took the knife she used to stab Spain from Spain's kitchen drawer after Appellant and Spain had already begun to fight inside the apartment. However, in the context of a prolonged and continuing altercation involving a deadly weapon, the requirement that a party to the offense must have known that a deadly weapon would be used does not necessarily require proof that the party had such knowledge *before* the altercation commenced. *See Crutcher v. State*, 969 S.W.2d 543, 546–47 (Tex.

App.—Texarkana 1998, pet. ref'd). If the evidence demonstrates that the defendant continues the physical altercation with the intent to promote or assist in the commission of the robbery after there is some indication that he is aware that a deadly weapon has been used or exhibited by another, the evidence will be sufficient to support his conviction as a party to the offense. *See id.*; *see also King v. State*, No. 12-12-00020-CR, 2013 WL 2407198, *9 (Tex. App.—Tyler May 31, 2013, no pet.) (mem. op., not designated for publication) (holding evidence of defendant's continued participation in assault of victim after deadly weapon was used by another substantiates trial court's deadly weapon finding).

Here, the evidence is sufficient to demonstrate that Appellant continued to participate in the physical altercation after he was aware that Hill had used and continued to exhibit the knife as a deadly weapon. Spain testified that, from the time Appellant and Hill entered the apartment to the time they left—during which Hill took the knife from the kitchen, stabbed Spain in the back, unplugged and moved the television, and attempted to stab Spain in the face—Appellant wrestled with Spain and attempted to punch, choke, and pin him down.

Moreover, Appellant referred to himself and Hill as "we" when he threatened to stab Spain in the head after Hill had already stabbed Spain three times with the knife. In light of this evidence, a jury could reasonably infer that Appellant knew that Hill used and exhibited the knife as a deadly weapon during the commission of the aggravated robbery and that Appellant's continued participation in the altercation shows his intent to promote or assist the commission of the crime. After reviewing the record and examining all of the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant, acting with the intent to promote or assist the commission of the offense, encouraged, aided, or attempted to aid Hill in the commission of an aggravated robbery. Thus, the evidence was sufficient to

10

support Appellant's conviction as a party to the offense. We overrule Appellant's first issue.

## V. *Evidentiary Rulings*

In his third issue, Appellant contends that the trial court abused its discretion when it allowed evidence of four prior convictions that were over ten years old to be admitted during the guilt/innocence phase of the trial.

### A. *Prior Conviction Evidence*

Before trial, the State filed a First Amended Notice of Intent to Offer Evidence of Extraneous Crimes, Acts, and Wrongs Committed by the Defendant, which included twenty-nine prior crimes and acts allegedly committed by Appellant. At trial, the trial court heard arguments from Appellant and the State that addressed, among others, the four convictions that Appellant challenges on appeal: two felony thefts that were committed on or about July 14, 1994, in King County, Washington; a robbery with a deadly weapon committed on or about November 13, 1992, in King County, Washington; and a burglary with a deadly weapon committed on or about November 13, 1992, in King County, Washington.

Appellant argued that the prior convictions were inadmissible under Rules 609, 404, and 403 of the Texas Rules of Evidence. Appellant argued that the prior convictions were beyond the time limit of Rule 609. Appellant also argued that intent was not at issue because defense counsel never asked any questions related to Appellant's intent at the time of the alleged offense. Appellant further argued that the remoteness in time between the prior convictions and the offense charged at trial rendered the prior convictions irrelevant under Rule 404(b). In the alternative, Appellant argued that, even if the convictions were relevant, their prejudicial effect substantially outweighed their probative value.

The State argued that the prior convictions were admissible under Rule 404(b), which does not have a time limitation, to show Appellant's common

plan or scheme, intent, or motive and to rebut a defensive theory. The trial court found that the extraneous offenses were relevant to show motive and intent and allowed the State to introduce the evidence under Rule 404(b). Prior to the State introducing the evidence, Appellant testified about his prior offenses and convictions on direct examination.

As a general rule, a complaint about improperly admitted evidence is waived if the same evidence is introduced by the defendant himself. *Wootton v. State*, 132 S.W.3d 80, 84 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (citing *Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993)); *see also Ohler v. United States*, 529 U.S. 753, 757 (2000); *Michell v. State*, 381 S.W.3d 554, 560 (Tex. App.—Eastland 2012, no pet.); *McDaniels v. State*, No. 05-01-01831-CR, 2002 WL 31761270 (Tex. App.—Dallas Dec. 11, 2002, pet. ref'd) (not designated for publication); *Johnson v. State*, 981 S.W.2d 759, 761 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd).

In *Wootton* and *Johnson*, the defendants introduced evidence on direct examination concerning their prior convictions before the State could impeach them with the prior convictions. In *Wootton*, the defendant did so following a ruling by the trial court that his prior convictions were admissible, while in *Johnson*, the defendant did so after the court declined to grant his motion in limine to exclude the prior convictions. *Wootton*, 132 S.W.3d at 84; *Johnson*, 981 S.W.2d at 761.

In both cases, the appellate courts held that the defendant had waived any error by introducing the evidence himself on direct examination. Although a defendant does not waive error when he has to introduce evidence to meet, rebut, destroy, deny, or explain evidence that the State has already introduced, that exception to the rule of waiver is not applicable in this case. *See Leday v. State*, 983 S.W.2d 713, 719 (Tex. Crim. App. 1998); *Rogers*, 853 S.W.2d at 35. Because

Appellant introduced the evidence of his prior convictions on direct examination, he has waived any error. We overrule Appellant's third issue.

### B. Evidence of Prior Bad Acts by Spain

In his second issue, Appellant contends that the trial court erred when it excluded evidence of Spain's prior drug use, Spain's alleged prior sexual encounter with Hill, and Spain's alleged drug transaction with Hill. Appellant sought to introduce testimony that, prior to the assault, Spain had used cocaine, Spain and Hill had sex for payment, and Spain had given money to Hill for her to buy drugs for him. Appellant argued these facts were evidence of Spain's bias against him because Hill had not had sex with him, had not gotten the drugs, and had not repaid the money. The trial court excluded the evidence, except the evidence that Spain claimed Hill owed him $40. The court reasoned that the other evidence was inadmissible because it was improper impeachment evidence. Appellant made a bill of exception or offer of proof, thus, has preserved this error for review. TEX. R. APP. P. 33.1.

### 1. Standard of Review

The standard of review for the trial court's ruling on the admission of evidence under the Texas Rules of Evidence is abuse of discretion. *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006) (citing *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004)). A trial court abuses its discretion when it admits or excludes evidence if its decision lies outside the zone of reasonable disagreement. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

### 2. Analysis

Appellant argues that Rule 608 of the Texas Rules of Evidence governs the admission of the evidence he sought to introduce. Rule 608(b) of the Rules of Evidence provides that "[s]pecific instances of the conduct of a witness, for the

purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." TEX. R. EVID. 608(b); *see Lopez v. State*, 18 S.W.3d 220, 223 (Tex. Crim. App. 2000). But Rule 608 does not permit the impeachment of a witness by specific instances of conduct to attack a witness's credibility. *See Dixon v. State*, 2 S.W.3d 263, 271 (Tex. Crim. App. 1999) (op. on reh'g). Because the evidence Appellant sought to introduce consisted of specific instances of conduct to show bias and because those instances were not prior convictions, neither Rule 608 nor Rule 609 are applicable. But Rule 613(b) of the Texas Rules of Evidence allows a witness to be impeached by circumstances or statements that show the witness's bias and motive. TEX. R. EVID. 613(b); *see Dixon*, 2 S.W.3d at 271.

The Texas Court of Criminal Appeals has outlined that a party must be afforded ample opportunity to attack the credibility of a witness by proving his "ill feeling, bias, motive and animus." *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). "The possible animus, motive, or ill will of a prosecution witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him." *Billodeau v. State*, 277 S.W.3d 34, 42–43 (Tex. Crim. App. 2009) (citing *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987), and TEX. R. EVID. 613(b)).

A witness's bias may be revealed through a witness's own conduct or statements, but before such extrinsic evidence may be admitted, a proper foundation must be laid. *Williams v. State*, 976 S.W.2d 330, 331 (Tex. App.—Corpus Christi 1998, no pet.). The foundation requires the defendant to ask the witness about prior statements or acts that evince bias; to tell the witness when,

where, and to whom the statement or act was made; to provide the details of the statement or act; and to afford the witness the opportunity to explain or deny the statement or act. TEX. R. EVID. 613(b); *Williams*, 976 S.W.2d at 331. If the witness denies the statement or act, then the defendant can introduce the extrinsic evidence. "While an appellant should be given great latitude in cross-examining witnesses in order to reveal possible bias, prejudice, or self-interest, the burden of showing the relevance of particular evidence to the issue of bias or prejudice rests on the proponent." *Lape v. State*, 893 S.W.2d 949, 955 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (citing *Chambers v. State*, 866 S.W.2d 9, 26–27 (Tex. Crim. App. 1993)). "The proponent of evidence to show bias must show that the evidence is relevant. The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party." *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004) (citing *Carpenter*, 979 S.W.2d at 634).

Appellant claimed that Spain was biased against him because Spain used drugs, because Hill had taken money to have sex with Spain, and because Hill had taken money to buy drugs for Spain. But Appellant does not explain how Spain's use of drugs, his previous liaison with Hill for money, or his alleged drug transaction with Hill translate into "ill will," "ill feeling," "bias," or "animus" toward Appellant. The trial court recognized the relevance problem, as do we, and the trial court excluded the evidence as proffered to impeach Spain, except for the existence of a debt owed by Hill to Spain. We also note that there was no foundation laid by Appellant that showed prior acts or statements by Spain to contradict Spain's denial of prior sex acts or drug transactions with Hill. Both Spain and Hill denied that they ever had sex and denied that Spain gave her money for drugs. Furthermore, Spain admitted he took drugs. In reviewing the record, we

cannot say that the trial court's decision was outside the zone of reasonable disagreement.

Moreover, we also conclude that, even if there was error, the error was harmless because it did not affect Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Billings v. State*, 399 S.W.3d 581, 589 (Tex. App.—Eastland 2013, no pet.) (citing *Johnson v. State,* 43 S.W.3d 1, 4 (Tex. Crim. App. 2001)). Appellant testified about his and Spain's drug use before the assault, stating that both he and Spain had their own drugs and crack pipes. Spain also testified about his own drug use. Thus, the jury could have inferred that Spain had used drugs that day and in the past.

Appellant further testified that Spain wanted sexual favors from Hill in return for money. Even though Hill admitted that she had fondled Spain before the assault, she denied that she ever had sex with Spain for money. Again, the jury could have inferred that this type of conduct could have occurred given the prior meetings between Spain and Hill. It is therefore unlikely that the exclusion of the alleged source of the debt or the exclusion of the specific acts of Spain in using drugs or allegedly having sex for money, as impeachment of his testimony, would have influenced the jury in such a substantial or injurious way that the jury would have reached a different verdict. We overrule Appellant's second issue.

## VI. *This Court's Ruling*

We affirm the judgment of the trial court.

February 14, 2014                      MIKE WILLSON

Do not publish. *See* TEX. R. APP. P. 47.2(b).      JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

16